WILLADSEN, Respondent v. CRAWFORD et al., Appellants

(60 N. W.2d 692)

(File No. 9378. Opinion filed November 4, 1953)

**Roger Lohman,** Parker, **Bielski, Elliott & Lewis,** Sioux Falls, for Appellants.

**Bogue & Masten,** Canton, for Respondent.

RUDOLPH, J. Plaintiff seeks to enjoin the defendant Crawford from maintaining a dam across the Vermillion river. The dam is located on land owned by defendant. The City of Parker, Lions Club of Parker and James H. Schaeffer have intervened. Intervenors take the position that the injunction should not issue. The trial court entered judgment in favor of the plaintiff. The defendant and intervenors, Lions Club and Schaeffer, have appealed. Facts are as follows:

Plaintiff owns land south of land owned by the defendant. The Vermillion river flows north through the land of the parties. In 1934 by means of a W.P.A. project the original dam was constructed on the land now owned by the defendant. At the time the dam was constructed an easement was granted by defendant to the State of South Dakota to build this dam with the right to flow the water on defendant's land. The dam was constructed of rock and dirt and was never maintained or repaired after being built. However, the dam remained until 1951 when it was washed out by the spring floods. Plaintiff acquired his land in 1943. Years ago 60 acres of plaintiff's land, which lie adjacent to the river, had been tiled and the outlet for the tile was the river. In June of 1952 the Lions Club of Parker contacted the plaintiff about rebuilding the dam. The plaintiff pro-

tested but the dam was rebuilt. The result of the dam is that water in the river channel across plaintiff's land is raised more than 2 feet. The raising of the water level places the outlet for the tile on plaintiff's land under water.

Plaintiff testified that during the time the dam was out his drain tile worked in a satisfactory manner and that it did not do so when the water was held back by the dam. He further testified that it appeared with the dam in the river there was seepage into his land from the increased height of the water and the land did not drain naturally because of the higher water in the river.

Intervenor Schaeffer built a home on a high point of ground a short distance from the river and overlooking the river directly across the river from plaintiff's land. He testified that he would not have built this home at that point had it not been that the dam backed up the water in the river and made what is referred to as a small lake. The Lions Club restored the dam with the object in view of making a small park or recreational area along the bank of the river on certain land owned by the defendant Crawford. This statement of the facts is sufficient for our present purpose.

The appellants make three principal contentions—1st, that plaintiff is estopped from maintaining this action because he bought his land knowing that the dam was in existence; 2d, plaintiff cannot maintain this action because others, especially intervenor Schaeffer, have expended money in improving their property relying upon the dam being kept in its present condition; 3d, plaintiff has failed to prove any damage due to the existence and maintenance of the dam.

There is no contention that defendant has acquired any right to maintain the dam because of the running of a prescriptive period. No easement of any kind has ever been granted by plaintiff or prior owners of plaintiff's land. Appellants' first and second contentions are therefore devoid of any claimed legal right to maintain the dam. The question presented in appellants' first contention is simply whether plaintiff's purchase of the land after the construction of the dam and knowing of its existence estops him from asserting

that defendant has no right to subject the property plaintiff purchased to the burden imposed by the continued maintenance of the dam.

Appellants rely on certain cases wherein minority stockholders of a corporation were held estopped from complaining ·of something which had occurred and of which they had knowledge before they acquired their stock. Cases cited by appellants are Von Schlemmer v. Keystone Life Ins. Co., 121 La., 987, 46 So. 991; Hawes v. Contra Costa Water Co., 104 U.S. 450, 26 L.Ed. 827; Dimpfel v. Ohio & M. R. Co., 110 U.S. 209, 3 S.Ct. 573, 28 L.Ed. 121. We deem it unnecessary to review each of these cases separately. In each case there was some fact or circumstance, such as acquisition of stock to expressly vex and annoy the company or subjecting the company to needless litigation, which prompted the court to deny the relief requested.

The question here presented concerns a right in real estate, i. e., whether defendant has acquired the right to burden the land which is now owned by the plaintiff with the continued maintenance of the dam. To hold that plaintiff is estopped as claimed by appellants would simply result in a reduction of the statutory time required to acquire such right by prescription. We do not determine that an estoppel may never be asserted which will result in a shortening of the statutory time, but if such be the result the elements of the estoppel should clearly appear.

An estoppel arises, where, by conduct or acts, a party has been induced to alter his position or do that which he would not otherwise have done, to his prejudice. Babcock v. McKee, 70 S.D. 442, 18 N.W.2d 750. The purchase of the land by the plaintiff in 1943 knowing the dam was in existence, neither caused defendant to build the dam, nor act in any other manner. The record discloses that nothing was done to the dam after it was built in 1934 until it was washed out in 1951. Plaintiff objected to the dam being rebuilt so no reliance can be placed upon any expenditure made in the process of rebuilding.

So far as concerns the Lions Club, it acted knowing of plaintiff's objections to the dam and its acts cannot, therefore, be the basis for an estoppel.

 Intervenor Schaeffer built his home in the year 1948. As stated above, his home overlooks the river but his land does not extend to the river. It is the contention that "in reliance upon the permanency of said dam" this home was built. There is no suggestion as to any basis upon which one may predicate a right to a never-changing landscape which may be viewed from the living-room window. In the absence of such suggestion, we conclude the controlling fact is that the permanency of the dam was easily subject of determination by intervenor. He made no inquiry from plaintiff or anyone else regarding the permanency of the dam and we will not cast upon plaintiff the burden of notifying each builder of a house which overlooks the impounded water that it was plaintiff's right within the prescriptive period to cause the removal of the dam. Silence can never be the basis of an estoppel unless there is a duty to speak. 19 Am.Jur., Estoppel, § 55. We find no duty upon plaintiff to advise intervenor regarding plaintiff's right with reference to the dam.

 It is established by the record that the water level in the river due to the dam is increased more than 2 feet on plaintiff's land. Plaintiff testified that not only was there a seepage of water into his land because of this increased water level, but that the drainage of his land was retarded thereby. We are convinced that an interference with the drainage of plaintiff's land and the seepage of the water into his land due to the increased water level constitute a flooding thereof within the meaning of SDC 61.0101 which in part provides that a lower owner may construct a dam across a nonnavigable stream "if the course of the water is not changed, vested rights are not interferred with, and no land flooded other than that belonging to the owner of such dam or upon which an easement for such purpose has been secured." We say parenthetically that in so holding we accept appellants' contentions without so deciding that the stream with which we are here concerned is a nonnavigable stream within the meaning of the cited code provision and that it is essential to plaintiff's cause that he establish damage.

Whether water is held back on the land by destruction

or interference with the land's drainage, or whether water is placed in and on the land by seepage, the land is flooded as effectively as it would be should water overflow the banks of the stream. Such was the early holding in the case of Pixley v. Clark, 35 N.Y. 520, 91 Am.Dec. 72. To the same effect is the holding in Healey v. Citizens' Gas & Electric Co., 199 Iowa 82, 201 N.W. 118, 126, 38 A.L.R. 1226, a case in which the authorities are reviewed and wherein the court quoted with the approval as follows:

"It matters not whether the damage is occasioned by the overflow of or the percolation through the natural banks, so long as the result is occasioned by an improper interference with the natural flow of the stream. * * * The liability was the same whether the water was dammed up and caused to overflow or to percolate through the banks of the stream. It was a case of flooding lands by damming up the water of a stream, and the liability of a wrongdoer in such a case has never been disputed."

In Farnham, Waters and Water Rights, § 549, numerous cases are cited in support of the statement,

"That the lower owner is not entitled to set back the water across the boundary line is most strongly demonstrated by the fact that the upper owner has a right to avail himself of the stream flowing through his property for drainage purposes to its fullest extent. The level of water standing in the soil will usually correspond quite closely to that of the water flowing in the stream, so that anything which raises the height of the latter will prevent the water in the soil from finding its way into the stream and will render the land adjoining the stream wet and unfit for cultivation. And any act of the lower owner which will tend to cause such a condition is a wrong to the upper owner and he is entitled to maintain an action to protect his rights."

While perhaps unnecessary, nevertheless we state, that we have considered the evidence in its light most favor-

able in support of the judgment. Appellants have argued that the seepage of the water into plaintiff's land was a benefit rather than a damage, and other similar points, which find some support in the evidence as presented by appellants, but such argument is based upon evidence which is disputed by plaintiff, and this court, as stated above, must accept that version of the evidence which will support the judgment.

The judgment appealed from is affirmed.

All the Judges concur.