**Olivia ROGERS, Plaintiff and Appellant,**

v.

**Irvin ROGERS, Defendant and Appellee.**

**No. 14089.**

Supreme Court of South Dakota.

Considered on Briefs Sept. 15, 1983.

Decided July 3, 1984.

Russell H. Battey of Williams, Gellhaus & Battey, Aberdeen, for plaintiff and appellant.

Joe L. Maynes of Maynes, Tonner, Maynes & Tobin, Aberdeen, for defendant and appellee.

WOLLMAN, Justice.

This is an appeal from the trial court's order denying appellant's motion to vacate a judgment and decree of divorce. We reverse and remand.

Appellant and appellee were married in 1949 and had seven children, only one of whom was a minor when this divorce action was commenced in 1980. On January 29, 1982, the parties entered into a settlement agreement that had been negotiated on their behalf by their attorneys. Paragraph VIII of the agreement provided in part:

The husband agrees to execute and keep in force at all times a valid Last Will and Testament, the terms being that if the husband predeceases any of the children of the marriage, any and all farm land owned at the time of his death would be transferred to his respective surviving children.

On February 3, 1982, the trial court entered a judgment and decree of divorce, which incorporated verbatim that portion of Paragraph VIII of the settlement agreement set forth above.

On February 9, 1982, appellee signed a document entitled "Contract to Execute Will," which states in part:

That the parties intend by this agreement to provide for the execution of a Will in which all the farm land owned by the husband or in which he may have an interest at the time of his death, will be bequeathed and devised to the children of the parties.

Neither this document nor any other instrument appearing in the record prevents appellee from disposing of any of the parties' farmland during appellee's lifetime.

On August 16, 1982, appellant signed an affidavit in support of a motion to vacate and set aside the judgment and decree of divorce in which she alleges that she had advised her trial attorney (who is not her attorney on appeal) that she would accept a reduced settlement on the condition that all of the real estate would pass to the parties' four sons if appellee died or discontinued the farm operation. The affidavit alleges that appellant had more than once been assured by her trial attorney that appellee would not be able to deprive their children of the farm by disposing of it and that there was no question that the farmland would go to the boys. With the further assurance that "the papers" were being prepared, appellant executed the property settlement agreement.

One of appellant's sons, who was present during her discussions with her attorney and when she executed the agreement, filed an affidavit in support of appellant's motion to vacate the judgment, stating that he had understood that his mother wanted "the land to be vested in such a manner that upon his father's death, it would pass to the boys."

Pursuant to appellant's motion, the trial court issued an order to show cause on September 13, 1982. The matter was submitted to the trial court on affidavits and a transcript of the divorce trial, following which the trial court entered the order appealed from.

Appellant argues that because she was surprised when she learned that her attorney had done nothing to prevent her husband from disposing of the farm, she should be relieved from the divorce judgment pursuant to SDCL 15–6–60(b).* We agree.

■ At the outset, we join with those courts which have held that rules authorizing relief from final judgments on grounds such as fraud or mistake are applicable to awards of support and property settlements incorporated in divorce decrees. *See Larson v. Larson*, 661 P.2d 626 (Alaska 1983), and cases cited at n. 3, p. 628.

■ "A motion for relief based on SDCL 15–6–60(b) is addressed to the sound discretion of the trial court. Absent an abuse of that discretion, the order denying such a motion cannot be disturbed on appeal. [citations omitted]" *Overvaag v. City of Dell Rapids*, 319 N.W.2d 171, 173 (S.D.1982). The trial court's discretion should be exercised liberally in accord with legal and equitable principles so as to promote the ends of justice. *See City of Lemmon v. U.S. Fidelity and Guaranty*, 293 N.W.2d 433 (S.D.1980); *Badger Northland, Inc. v. Van Der Boom*, 235 N.W.2d 903 (S.D.1975); *Ingalls v. Arbeiter*, 72 S.D. 488, 36 N.W.2d 669 (1949); *Jones v. Johnson*, 54 S.D. 149, 222 N.W. 688 (1928).

The terms, "mistake," "inadvertence," "surprise," and "excusable neglect" as used in SDCL 15–6–60(b)(1) have no fixed meaning; the question must be determined from the facts and circumstances presented by each case. *See Badger Northland, Inc. v. Van Der Boom, supra.*

■ Inasmuch as the motion to vacate was submitted on the basis of affidavits, our review of the evidence "is unhampered by the rule that a trial judge who has observed the demeanor of the witnesses is in a better position to intelligently weigh the evidence than the appellate court." *Davis v. Interstate Motor Carriers Agen-*

cy, 85 S.D. 101, 105, 178 N.W.2d 204, 206 (1970). *See also Gilliland v. Courtesy Motors, Inc.*, 89 S.D. 273, 232 N.W.2d 828 (1975).

■ On the basis of the affidavits, we are satisfied that appellant intended to prevent appellee from depriving the children of the farm by precluding him from disposing of the farm during his lifetime. Appellant's statements at the divorce trial that she understood the property settlement agreement are not conclusive with respect to the full extent of that understanding. There was no evidence that appellant was sophisticated in property and divorce matters. The agreement was not so clear, unambiguous, and understandable by a layman that appellant should be held to have fully understood the full import of the critical language therein. Additionally, appellant's understanding of the agreement may not even be relevant in view of the assurances by her attorney that other "papers" were also being prepared. The other "papers" that appellant expected would carry out the settlement agreement turned out to be appellee's February 9, 1982, "Contract to Execute Will," which came into existence only after the judgment and decree was entered. Only then, when all the documentation was apparently complete, could appellant have had an opportunity to examine it and really understand, to her surprise, that the result was not what her attorney had assured her it would be.

■ We cannot agree with appellee that any mistake or negligence of appellant's trial attorney in failing to accomplish the intended result in this divorce should be imputed to appellant and should bar her from relief from the judgment. "[T]he mistake or negligence of an attorney will not be imputed to the client as a bar to relief where (1) the act or omission of the attorney is excusable or (2) the defendant himself [here appellant] is free from neglect in the matter. (citations omitted)" *Ackerman v. Burgard*, 79 S.D. 119, 124,

* SDCL 15–6–60(b) provides in part: "On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons: (1) Mistake, inadvertence, surprise, or excusable neglect; . . ."

109 N.W.2d 10, 12 (1961). In this case, the negligence of appellant's attorney will not be imputed to her because she is free from any unexcusable neglect. As we have indicated, the settlement agreement was not readily understandable by a layman. Accordingly, because appellant is not chargeable with neglect in her own right, she is not barred from claiming any surprise.

 Appellee contends that appellant is estopped from seeking relief from the divorce judgment. A party to a divorce who has accepted the benefits of the judgment may in a given case be held to be estopped from challenging the validity of the decree. This is especially true in those cases in which the party who is attempting to attack the decree has remarried in reliance upon the decree. *See Hanks v. Hanks,* 296 N.W.2d 523 (S.D.1980); *Brockel v. Brockel,* 80 S.D. 547, 128 N.W.2d 558 (1964). Here, however, the only benefits flowing to appellant have been in the nature of money and property. Appellant will not be entitled to additional money or property as a result of any modification of the decree in accordance with her prayer for relief. Accordingly, her reliance upon the decree has not been of such a nature as to render it inequitable or contrary to public policy to permit the decree to be modified to reflect the true intentions of the parties.

This is not to say, of course, that upon remand the trial court may not impose upon appellant such terms as it determines to be just as a condition precedent to modifying the judgment. As set forth above, SDCL 15-6-60(b) provides that "[o]n motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment ...." This court apparently has not heretofore addressed the application of 15–6–60(b) in the context of a motion for relief from a judgment entered in an action for divorce. *Cf. Ormsby v. Conrad,* 4 S.D. 599, 57 N.W. 778 (1894). We find persuasive that which the Supreme Court of Tennessee wrote with respect to the application of its state's counterpart to SDCL 15–6–60(b):

Finally, we consider the action of the Court of Appeals in remanding the case to the trial court with directions that the wife be permitted to amend her complaint to pray for alimony, that the defendant be permitted to respond thereto and that a hearing be conducted upon the merits of that issue.

Rule 60.02, T.R.C.P., provides:

"On motion <u>and upon such terms as are just,</u> the court may relieve a party or his legal representative from a final judgment, order or proceeding for the following reasons: ..." [Emphasis in original.]

The underlined language vests in the court a broad discretion with respect to the imposition of conditions which must be met by one who seeks relief from a final judgment under Rule 60.02. It is well recognized that a court in granting a motion to open or vacate a judgment may, within reasonable limits, impose such terms as it deems just and proper to prescribe....

We consider it only just and reasonable that as a condition to awarding relief to the defendant under Rule 60.02 the issue of alimony should be reopened in the trial court as provided in the decree of the Court of Appeals.

*Qualls v. Qualls,* 589 S.W.2d 906, 910 (Tenn.1979) (citations and footnote omitted).

Accordingly, upon remand, the trial court should consider what terms, if any, should be imposed upon appellant as a condition to awarding the relief she requests.

Appellant's request for attorney's fees on appeal is denied.

The order denying the motion to vacate the judgment is reversed, and the case is remanded to the circuit court for further proceedings.

FOSHEIM, C.J., and DUNN and MORGAN, JJ., concur.

HENDERSON, J., dissents.

HENDERSON, Justice (dissenting).

I respectfully dissent and would affirm the trial court.

The majority opinion, in effect, pits and elevates affidavits of appellant and her son against a six-page Property Settlement Agreement (with attachments), the terms thereof, the sworn testimony of appellant before a circuit judge, the quality of representation by two very experienced, able lawyers practicing law in Aberdeen, South Dakota, and the reflection of a long-time trial judge. Vaulting the affidavits over the aforesaid, the majority opinion holds that a written contract and a duly entered judgment are set aside. It is wrong.

On February 22, 1980, an action was commenced by appellant-wife. By March 12, 1980, negotiations for settlement were underway. Proper answer and counterclaim and reply were served. Negotiations continued. Depositions were taken on November 19, 1980. Negotiations continued from December 1980 through May 1981. Negotiations fell through. The matter was set for trial on June 17, 1981. The parties later stipulated that the trial be continued to July 15, 1981. Extensive negotiations continued concerning a Property Settlement Agreement and language to be contained in a Judgment and Decree of Divorce. These negotiations included (as of June 15, 1981) a provision that appellee-husband would execute a Last Will and Testament which would devise real property owned at the time of his death to *all of the children* of the parties but not necessarily on an equal basis. Further negotiations continued between the lawyers and their clients through June 22, 1981, to include an agreement, by correspondence between the respective attorneys, that appellee would draft a will leaving his real property *to the children of the marriage* and the attorneys specifically agreed that such a provision would be expressly included in a Property Settlement Agreement. Ultimately, on June 24, 1981, appellee and his attorney submitted a redrafted Property Settlement Agreement including the precise language ultimately set forth in Paragraph VIII of the Property Settlement Agreement which pertained to the execution of a Last Will and Testament, and which provision was expressly incorporated in the Final Decree of Divorce. When the redrafted Property Settlement Agreement was so submitted, a Contract to Execute a Will was forwarded by appellee and his attorney to appellant and her attorney.

Notwithstanding all of these negotiations, an appraisal was made by one Kenneth R. Jark, an expert employed by appellant, on July 9, 1981. As a result of this appraisal, negotiations continued. Appellant then saw fit to serve notice of a new trial date, trial to be had on October 14, 1981. This new trial date triggered further negotiations and further offers which included the very same provision concerning an execution of a will and a Contract to Execute a Will. As of October 8, 1981, the parties still had not reached a settlement so negotiations continued. On November 3, 1981, appellant submitted a comprehensive offer of settlement. In November 1981, the parties continued to bargain and haggle about alimony and who was to keep the house of the parties and how appellee-husband could buy the home and pay it off. Again, in these negotiations, appellant-wife had absolutely no problems whatsoever with respect to the execution of a will, its provisions, and a Contract to Execute a Will.

By January 22, 1982, appellant submitted a comprehensive offer to settle the case and she tendered, as part of the comprehensive offer to settle, the very same Last Will and Testament language and Contract to Execute a Will language that the parties had already agreed upon several times. By January 29, 1982, the parties executed a Property Settlement Agreement. Understandably, the identical Last Will and Testament language and Contract to Execute a Will language was included, same having been agreed upon on divers occasions. Upon this settlement, and as a part provision thereof, appellee parted with $2,000 in cash by way of attorney's fees for benefit

of appellant and her attorney. Substantial consideration therefore passed.

This action was and is anything but a default action. The matter came on regularly *for trial* on February 2, 1982, by stipulation. The parties and their counsel appeared before His Honor. The resultant judgment is anything but a default judgment. Who drafted the Findings of Fact and Conclusions of Law? Answer: appellant-wife. Who drafted the Judgment and Final Decree of Divorce? Answer: appellant-wife who incorporated the very Last Will and Testament language and Contract to Execute a Will language which was contained in the Property Settlement Agreement, and to which she had agreed to on divers occasions. The Final Decree of Divorce and Findings of Fact and Conclusions of Law were entered on February 3, 1982.

Marriage is, of course, a civil contract. SDCL 25-1-1. Parties have the right to make contracts with respect thereto. SDCL 25-2-13. This includes the property which husband and wife have accumulated during the course of the marriage. These parties entered into a civil contract via a written instrument in our mother language, English. There is no suggestion in the record that she does not understand English. She was asked by her counsel (under oath):

Q. Mrs. Rogers, I show you what has been marked as plaintiff's Exhibit No. 1 [Property Settlement Agreement], and ask you if you have had an opportunity to read and examine this agreement?

A. Yes.

Q. And I'll ask you if your signature appears thereon?

A. Yes.

Q. Was this property settlement explained to you?

A. Yes.

Q. Do you fully understand the nature of the property settlement?

A. Yes.

Q. And does it meet with your satisfaction?

A. Yes.

On the same date that the Decree of Divorce was entered, expressly pursuant to Paragraph V(C) of the Decree of Divorce, appellee parted with $30,000 cash, all for the benefit of appellant. Unquestionably, this is sizeable, substantial consideration. One of the conditions of this contract (the Property Settlement Agreement) was that the wife was to vacate the house of the parties on April 3, 1982. So far as the record is concerned, as of September 1, 1982, she continued to reside in the house. The record suggests she flaunted her promise word and the judgment of the court and remained in the house, nesting with the $32,000. In her comfort, she sought out counsel to find fault with the document affording her comfort.

Lest that grand old lady called equity be not shunned by the author, appellant, per her contract, received: (a) a 1977 Chevrolet automobile; (b) most extensive personal property consisting of household goods, effects, and furniture; (c) the $30,000 cash aforesaid; (d) $60,000 payable over nine years, beginning with a first payment one year after entry of Decree of Divorce, same being tightly secured by an assigned interest in a contract for deed; (e) an additional $60,000 by way of the parties' interest in a home with three acres, payable at 8% over twelve years at the rate of $649.48, first payment on the first month that she vacates the house (the parties had agreed, in effect, that he would get the house); (f) $300 per month alimony; and (g) $200 monthly child support for a lad who is to turn 18 on July 3, 1984.

Appellant, apparently, changed counsel and began questioning (for the first time) the contents of her ex-husband's Last Will and Testament. Appellant refused to vacate the house that she had agreed to vacate. She made no re-tender of the $2,000 attorney's fees nor the $30,000 in cash. She has never offered to restore the fruits of the contract that she received, to include a family car and all of the household goods and furniture. Appellant wants to keep everything that she has, isolate one portion

of her contract, and litigate over it. I maintain that she is estopped, under equity, from doing so. She cannot rescind part of the contract and affirm the part she wants.

Although she knew of the contents of appellee's Last Will and Testament all during the summer of 1982 and had an attorney review it, she kept the fruits of her contract, refused to move from the house as agreed, and did not question the provisions concerning the Last Will and Testament language or the Contract to Execute a Will language as set forth in her civil contract, denominated Property Settlement Agreement.

An issue was made of the fact that the Contract To Execute a Will was not dated until February 9, 1982, six days after the divorce. The Contract to Execute a Will is in the exact same form and the exact same language as was first submitted to appellant's counsel on June 24, 1981, almost eight months prior to the entry of the Judgment and Final Decree of Divorce. The filing of the Contract to Execute a Will was just a mere clerical act as the terms and conditions had been agreed to and discussed many times through the entire settlement negotiations.

Enter yet another attorney on behalf of appellant on August 15, 1982, indicating that this attorney was now delving into this case and was considering entirely reopening the judgment of divorce. This attorney ultimately faded from the picture and present appellate counsel appeared on her behalf.

On September 14, 1982, appellee was greeted with an Order to Show Cause to vacate and set aside the judgment entered herein on February 3, 1982. Although appellant claimed, by her pleadings, that the judgment should be set aside for mistake, surprise, inadvertence, or excusable neglect, her trial counsel admitted before the trial court that mistake and inadvertence decisions in this Court were not helpful to her cause. This damaging admission is

well taken. Appellant's ship at the appellate level floats or sinks under surprise and/or excusable neglect under SDCL 15-6-60(b)(1).[1]

Appellant-wife, through her counsel, had drafted Finding of Fact 7, approved by the court, which provides:

7. That the parties *have freely and voluntarily entered into a* Child Custody, Child Support and *Property Settlement Agreement* dated January 29, 1982, which is entitled *"Property Settlement Agreement"* and it is *their mutual desire and intention that this agreement form the basis for the settlement* and determination *of all* of their respective *rights, obligations, and duties arising out of their marital relationship*, subject to approval by this Court. (Emphasis supplied mine.)

Also, appellant-wife, through her counsel, had drafted Finding of Fact 8, approved by the court, which provides:

8. That *the Property Settlement Agreement*, the original of which is marked Exhibit 1 and made a part hereof by this specific reference thereto, with the same force and effect as if herein set forth at length and detail, *constitutes a fair, just and equitable settlement and determination of all of their respective rights, obligations and duties arising out of their marital relation*, and the Court specifically hereby approves such Agreement and all of the terms thereof, and adopts the same by the above reference thereto as a part of these Findings of Fact. (Emphasis supplied mine.)

Conclusion of Law 6 was likewise drafted by appellant, through her counsel, and states, inter alia, that the Property Settlement Agreement "constitutes a fair, just and equitable settlement and determination of the rights, obligations and duties of the parties arising out of their marriage * * * " and that the "terms" of the Property Settlement Agreement "are hereby adopted, by this Court * * * " with the "same force

---

1. Fraud or mistake as a means to set aside this judgment is inapposite; it was not pleaded or relied upon below and this Court cannot erupt, sua sponte, with such grounds like a legal volcano. Appellant and her sons have not accused appellee or his attorney with fraud.

and effect as if herein set forth at length and in detail."

With respect to the Judgment and Final Decree of Divorce, drafted by appellant's counsel, approved by her, approved by appellee and his counsel, and adopted by the trial court, Paragraph VIII of said judgment provides:

> The husband agrees to execute and keep in force at all times a valid Last Will and Testament, the terms being that if the husband predeceases any of the children of the marriage, any and all farm land owned at the time of his death would be transferred *to his respective surviving children.*

> If a child has predeceased the husband, leaving issue of his or her body, the share of the deceased child under the Will is to be equally divided among the issue of such deceased child. (Emphasis supplied mine.)

This language is identical to the language which was submitted to appellant on June 24, 1981, and as included in the Property Settlement Agreement, Paragraph VIII, which was identified as Exhibit 1, and received in evidence.

There are other pertinent provisions of this judgment (Property Settlement Agreement is set forth in extenso) which are deserving of appellate consideration. Particularly, I refer to Paragraph XI of the judgment which provided: "Each of the parties expressly certifies that each of them has entered into this agreement upon mature consideration and upon the advice of separate counsel." Said Paragraph XI of the judgment (her counsel was the scrivener) contains language which, by itself, would estop wife from now coming forward and attacking this decree. This language is as follows:

> *Consent* to the execution of this Property Settlement Agreement *has not been obtained by duress, fraud, or undue influence of any person; no representations of an act has been made by either party to the other except as herein expressly set forth;* the wife has had full access to the books, records, and files of the husband, and the wife has full knowledge as to the business and affairs of the husband, and the nature, extent, and value of his separate property, and the property of the parties hereto; *and this agreement is fair and reasonable.* (Emphasis supplied mine.)

Appellant seeks to disavow her written contract and now, by affidavit, tries to influence the courts of this state into believing that there has been some type of representation by her own attorney which was, and is, supposedly damaging to her and the sons of the marriage. The father got the farm. He agreed to will the farm to his surviving children in equal shares. He did so. She has no right to come forward and say that he, the father, has taken any advantage of her or her attorney. The boys had no more right to the farmland than the girls; the boys have no right to oust the girls of their rightful inheritance by affidavits authored by one son and the mother to not only try to rewrite the terms of a written contract but to absolutely impose upon a father how he will distribute his worldly goods. What right, in law, does the boy or his mother have to force a man to will his property in a manner contrary to his written contract and a will he prepared which she saw and agreed to? The answer: none. This Justice hazards that she seeks a deed to the farm ground to insure that it is beyond the father's control. With a commitment to her of $120,000 in payments plus alimony of $300 per month, the father needs economic breathing room to make the commitments. Under oath, she admitted before the trial court, at the time that the divorce was granted, that she read the Property Settlement Agreement, that she understood it, and that she was satisfied. Is an oath meaningful or not? Moreover, she pointed out to the judge that there had been extensive negotiations relating to the property and that she had executed instruments of conveyance in accordance with the Property Settlement Agreement, to include telling the judge that she had "sold the home located on the farm" to her ex-husband. With the $32,000 in hand, and with the

automobile and the furniture plus the alimony and the child support, she now wants to rescind the contract because of one provision not to the liking of herself and a son, notwithstanding her ex-husband has fully performed and, most importantly, on the very item (the Last Will and Testament) that she claims "surprise." When did "surprise" become a grounds for rescinding a written instrument in this state? The grounds for rescission in this state are:

(1) If consent of the party rescinding or of any party jointly contracting with him was given by mistake or obtained through duress, fraud, or undue influence exercised by or with the connivance of the party as to whom he rescinds, or of any other party to the contract jointly interested with such party;

(2) If through fault of the party as to whom he rescinds, the consideration for his obligation fails in whole or in part;

(3) If the consideration becomes entirely void from any cause;

(4) If such consideration before it is rendered to him fails in a material respect from any cause; or

(5) By consent of all the other parties. SDCL 53–11–2.

The trial court below, and I agree with it, held that Paragraph VIII of the Property Settlement Agreement was written in simple, unambiguous language, that she could understand. Having testified under oath that she understood this document and having signed a document that she understood it, how can an affidavit overcome such strong evidence? The trial court held, and I agree, that no representations, except as set forth in the agreement, were made. She signed a written document to that effect. She swore under oath that all of the property settlement terms met with her satisfaction. As to how this appellant can now claim surprise, is a total mystery to me. She is relying upon surprise to not only try to set aside a tried (by stipulation) divorce case culminating in a decree but also a civil contract where she retains the entire fruits of her bargain. Yet, her supplication is heard by a knock on the door of equity. Her hands are unclean and I would not open the door.

Excusable neglect has no fixed meaning. This is a concept which has been repeatedly voiced in this Court. Certainly, as men of reason in the law, we have the right to consider that there were extensive negotiations in this case; that there were parties represented by most experienced, able lawyers; and that the parties believed, as did their lawyers, that the property settlement was fair, just, and equitable, as did the trial court which presided over this action. There is simply no excusable neglect on her part or that of her counsel. Appellant, in actuality, is claiming that there is a different agreement. How is this equated with neglect? There is no neglect by appellant's former counsel. I have reviewed the affidavits on file herein upon which the Order to Show Cause was predicated. Appellant and her son do not use the word "neglect" or "negligence." The transcript of the divorce proceedings reveals her testimony a) that there had been extensive negotiations dealing with the property settlement, b) that she had an opportunity to read and examine the Property Settlement Agreement, c) that the Property Settlement Agreement was fully explained to her, d) that she understood the nature of the settlement, e) that she was fully satisfied with the agreement, and f) that she signed the agreement.

I find the majority's position on the estoppel issue, considering the fruits of the contract which she possesses, to be preposterous. The majority pooh-poohs the benefits flowing to appellant as apparently being only "in the nature of money and property." "An estoppel arises, where, by conduct or acts, a party has been induced to alter his position or do that which he would not otherwise have done, to his prejudice." *Willadsen v. Crawford*, 75 S.D. 161, 164, 60 N.W.2d 692, 694 (1953). Appellee altered his position by a written contract. As set forth in *Iverson v. Iverson*, 87 S.D. 628, 631–32, 213 N.W.2d 708, 710 (1973),

"[t]he doctrine ... is bottomed on principles of morality and fair dealing and is intended to subserve the ends of justice. It seeks to accomplish that which is fair between man and man." Such a statement is self-destructing to the theory of the majority's position on estoppel.

Bibliography of law supporting this dissent: (1) SDCL 53–11–2 (rescission statute); (2) *Forester v. Weber*, 298 N.W.2d 96 (S.D. 1980), holding that contract principles are applicable when interpreting a property settlement agreement incorporated into a divorce decree; also holding that ambiguities (the majority apparently holding that there is some nebulous type of ambiguity in the Property Settlement Agreement at hand) arising in a contract should be interpreted and construed against the scrivener, citing *City of Sioux Falls v. Henry Carlson Co.*, 258 N.W.2d 676 (S.D.1977); (3) *Flynn v. Flynn*, 338 N.W.2d 295, 296 (S.D. 1983), holding that "parol evidence should not be admitted where the meaning of a contractual provision is patently clear," citing *North River Ins. Co. v. Golden Rule Constr.*, 296 N.W:2d 910 (S.D.1980) and *Delzer Constr. Co. v. South Dakota State Bd. of Transp.*, 275 N.W.2d 352 (S.D.1979); (4) 24 Am.Jur.2d *Divorce and Separation* § 471 (1983), providing, inter alia, that the party who obtains a decree is not ordinarily entitled to attack it and is subject to estoppel or quasi-estoppel; (5) 24 Am.Jur.2d *Divorce and Separation* § 464 (1983), providing, essentially, that one cannot accept benefits of a decree and not be bound by its burdens; (6) *Johnson v. Johnson*, 291 N.W.2d 776 (S.D.1980), holding that in order to determine intent of parties, their separation and property settlement agreement, language of which was repeated in divorce decree, had to be interpreted as written and holding that a contract must be construed as a whole, not just a detached portion of it; (7) *Rousseau v. Gesinger*, 330 N.W.2d 522 (S.D.1983), and *Blare v. Blare*, 302 N.W.2d 787 (S.D.1981), both standing for the proposition that a property settlement in a divorce action is designed to settle with finality the property rights of the parties as of the time of the entry of judgment; (8) *Willadsen*, 60 N.W.2d 692; and (9) *Iverson*, 213 N.W.2d 708.

If, indeed, the heart of the majority opinion is that the Property Settlement Agreement in question does not fully reflect the understanding of the parties and that is the reason why the judgment and decree of divorce should be vacated, so perforce it can be subsequently modified to reflect that which the parties had intended to agree upon, this Court is opening the door to alter, modify, or add to the written contract of these parties. Furthermore, this Court is tolerating a very low form of proof, namely two affidavits, far worse than parol evidence, to overcome a written contract, sworn testimony, and the considered judgment of an experienced and highly regarded circuit court judge. The affidavit of Duane Rogers, the son, is replete with rank hearsay and expresses conclusions about what he understood from what his mother understood when his mother counselled with her attorney, his understanding of his mother's intent and that he agreed with his mother that she should execute the Property Settlement Agreement based upon her understanding of that contract. Such statements are not facts. To use same as a form of proof and to have the highest court in this state partially employ it to reverse this decision, beggars the imagination and intellect of any man or woman versed in the law. Appellant's affidavit, to buttress her own self-serving and conclusory statements, incorporates her son's hearsay affidavit. The affidavit of appellant is a maze of factual conflict and conclusions. In six separate places in her affidavit, she indicates that it was her understanding that "all of the real estate would go to the four boys," "all of the real estate would be situated in such a manner that it would automatically go to the boys," "the farmland would go to the boys," "the farm was to be protected for the boys," and "[t]hat she was taken totally by suprise [sic] when she was advised that it was not a vested title with a guarantee to pass to the boys, but, rather, a simple comittment [sic] that whatever land

was left at the time of death would pass to the children." This is an amazing affidavit for appellant to sign for there was no written documentation that only the male siblings were to someday get the farm. Her affidavit contains this remarkable statement: "[T]hat the Judgment and Decree of Divorce provided for nothing more than a contractual arrangement whereby the land could pass to the boys as agreed by her." Obviously, this is a fallacious statement contrary to the very written agreement that she entered into. In essence, the affidavit fantasizes that she was led to believe that the farmland would immediately vest in the boys. It is evident that only a deed could have accomplished this purpose and there was never any contractual obligation of appellee to deed the family farm immediately to the male siblings, *see* Paragraph VIII of the Property Settlement Agreement and Paragraph VIII of the Judgment and Final Decree of Divorce, *supra*.

The majority opinion would permit the trial court to impose "terms" that "are just." Appellant is seeking to rescind a contract by "surprise." Those terms, in my opinion, would necessitate a return of $32,000 in cash, the extensive personal property which she obtained to include an automobile, and all of the alimony that she has received which must now amount to thousands upon thousands of dollars, and to place the parties in status quo before the agreement was signed. She has had the use of a house, and that would amount to several thousands of dollars, also. An award of terms that are just does not meet the substantive aspect of this dissent, nor does it lift the rationale of the majority into a plausible work. It is an academic bail out.

Appellant desires equity but she has not done equity. She takes benefits under the decree but disputes its validity. Having enjoyed the fruits of her contract, she should be equitably estopped from denouncing its origin. Stability should be accorded the Property Settlement Agreement, a private civil contract, as well as the divorce decree for this controversy has been decided and the interest of litigants

and public policy demands that this action remain in repose. *See Adam v. Adam*, 254 N.W.2d 123, 130 (S.D.1977). To punish appellee for having complied with his contract, and with having drafted a Last Will and Testament in exact accordance with the Contract to Execute a Will and the Final Decree of Divorce, passeth all understanding. In the name of lasting, durable and stable civil contracts in domestic relations law known as property settlement agreements, where does this decision leave the litigants and the Bar of the State of South Dakota?