**In re H & M PARMELY FARMS,
A Partnership.**

**Bankruptcy Nos. 384–00055 to
384–00057.**

United States Bankruptcy Court,
D. South Dakota, C.D.

Dec. 13, 1989.

James Carlon, Pierre, S.D., for debtor.

Thomas Lloyd, Pierre, S.D., for FmHA.

IRVIN N. HOYT, Chief Judge.

James E. Carlon, counsel for the debtors, has filed a motion to enforce the provisions of the debtors' final amended consolidated Chapter 11 plan of reorganization which was confirmed by the Court [1] on September 30, 1985. Creditor Farmers Home Administration objects to debtors' motion, claiming that their action is an attempt to "cash out" FmHA and defeat its election under 11 U.S.C. § 1111(b).

1. The Honorable Peder K. Ecker, United States Bankruptcy Judge, presiding.

2. The central nature of these elections require that they be set forth verbatim. In Harold's case the election read as follows:

COMES NOW the United States of America, acting through the Farmers Home Administration, a creditor in this matter who holds a claim secured by a lien on property of this estate consisting of real estate and personal property and the amount of the obligation consisting of $191,110.99 principal and $50,-630.85 interest as of June 26, 1984, of which such claim is a part in amount and more than half in number of allowed claims of its class, and hereby elects, pursuant to Section 1111(b) of Chapter 11, Title 11 of the Code, application of paragraph (2) to Section 1111(b). Accordingly, notwithstanding Section 506(a), the claim of this creditor is a secured claim to the extent that such claim is allowed, to-wit, to the extent of $241,741.84.
Dated this 19th day of April, 1985.
United States of America.
FARMERS HOME ADMINISTRATION
/S/ Robert J. Haar
Assistant United States Attorney

The 1111(b) election from Merlyn Parmely read as follows:

Harold and Merlyn Parmely filed for bankruptcy under Chapter 11 on June 26, 1984. Their cases were consolidated on October 10, 1984 and a Chapter 11 plan of reorganization was filed by them that December. The plan provided, among other things, for the dissolution of the Parmely Farms partnership and the treatment of FmHA's claims. Under the plan, Harold and Merlyn divided between themselves FmHA's claim and its underlying security. FmHA's claims were further divided into portions secured by real estate and those secured by chattels.

On April 1, 1985 the Court approved Parmelys' disclosure statement and an order to that effect was entered on April 30, 1985. On April 19 and pursuant to Bankruptcy Rule 3014, FmHA filed its § 1111(b) election in both Harold's and Merlyn's cases.[2] On May 28, 1985, FmHA voted against confirmation of Parmelys' plan. On June 3, the Court held a hearing on the confirmation of Parmelys' plan. The transcript of that hearing reveals that FmHA agreed to change its vote and vote in favor of confirmation but that it was making a § 1111(b) election.[3] The plan was con-

COMES NOW the United States of America, acting through the Farmers Home Administration, a creditor in this matter who holds a claim secured by a lien on property of this estate consisting of real estate and personal property and the amount of the obligation consisting of $229,845.95 principal and $75,-031.43 interest as of June 26, 1984, of which such claim is a part in amount and more than half in number of allowed claims of its class, and hereby elects, pursuant to Section 1111(b) of Chapter 11, Title 11 of the Code, application of paragraph (2) to Section 1111(b). Accordingly, notwithstanding Section 506(a), the claim of this creditor is a secured claim to the extent that such claim is allowed, to-wit, to the extent of $304,877.38.
Dated this 19th day of April, 1985.
United States of America.
FARMERS HOME ADMINISTRATION
/S/ Robert J. Haar
Assistant United States Attorney

3. The salient part of the transcript reads:
Mr. Carlon: ... In regard to the summary of acceptances and rejections, it is my understanding that Farmers Home, Mr. Haar is here to speak to it, will be voting in favor of the plan....
Mr. Haar: Yes. The plan now that's being voted on really isn't the final one, is it?

firmed on that basis. The debtors filed their final amended consolidated Chapter 11 plan of reorganization on September 23, 1985. For reasons never explained, the plan provided for FmHA's § 1111(b) election as to Parmelys' real estate, but not as to their chattels. The Court's order confirming the plan was entered on September 30.

On March 25, 1986, Parmelys filed a motion to modify their plan together with a modified confirmed Chapter 11 plan of reorganization. Parmelys' modified plan still provided for FmHA's § 1111(b) election as to real estate but still made no provision for the election as to debtors' chattels. After a July 7 hearing, Parmelys withdrew their motion to modify.

On March 2, 1989, Parmelys again moved to modify their plan and furnished a second modified confirmed Chapter 11 plan to the Court. Again, the plan reflected FmHA's § 1111(b) election only as to Parmelys' real estate. A hearing on Parmelys' motion was held on May 9 at which time their motion was denied. An order of denial was entered on July 10, 1989.

On August 24, 1989, Parmelys brought a motion to enforce the provisions of their plan against FmHA. The plan would allow them to cash out FmHA's chattel claim through the sale of their livestock. FmHA resisted the motion, claiming that its § 1111(b) election made it fully secured as to all of Parmelys' chattels and entitled it to all of the proceeds from the sale of the livestock secured to FmHA. A hearing on Parmelys' motion was held on September 12, 1989. At the hearing, FmHA asserted that its § 1111(b) election reached Parmelys' real estate and chattels and that the sale provision in Parmelys' plan was insuf-

ficient to trigger § 1111(b)(1)(B)(ii).[4] Parmelys claimed that the plan's sale provision was sufficiently specific and that FmHA's acquiescence and/or failure to object to its treatment under Parmelys' plan now estopped it from objecting to enforcement of the plan on its own terms. Counsel were instructed to brief the issues and the matter was taken under advisement.

## ISSUES

Parmelys claim that FmHA did not object to the manner in which its § 1111(b) election was included in their plan and that FmHA should now be estopped from contesting the plan's provisions. Parmelys further assert that the plan's sale provision authorizes them to sell their chattels for prepayment of FmHA's claim notwithstanding the § 1111(b) election.

FmHA argues that it is not estopped from claiming that its § 1111(b) election attached to Parmelys' chattels because the required elements of an estoppel have not been proven. It also argues that Parmelys should be precluded from pleading estoppel because of their own bad faith in failing to fully incorporate FmHA's § 1111(b) election into their plan. FmHA also alleges that the non-specific sale provision in Parmelys' plan does not prevent it from maintaining its § 1111(b) election.

## DECISION

■ The effect of the § 1111(b) election is to permit the secured creditor to maintain a lien upon its collateral to secure the full amount of its allowed claim, irrespective of the valuation of such collateral by the court under § 506(a). *See* 5 L. King

---

Mr. Carlon: No, it isn't. We have agreed with you on some valuations of your chattel of 1,000 for equipment, 50,000 for livestock, and 240 per acre on real estate.
Mr. Haar: Last month.
Mr. Carlon: Yes, and that will be incorporated in the plan.
Mr. Haar: And we will file an 1111(b).
Mr. Carlon: You will be filing an 1111(b). Based on that, Your Honor, we ask the Court *to confirm the plan.*
The Court: Is that the agreement, Mr. Haar?
Mr. Haar: That is my understanding.

Transcript of hearing held June 3, 1985 at pp. 4–5.

**4.** There appears to be some confusion concerning whether Parmelys' argument on the preclusion of FmHA's § 1111(b) election is based upon § 1111(b)(1)(A)(ii) or § 1111(b)(1)(B)(ii). Parmelys' brief focuses on § 1111(b)(1)(B)(ii) while FmHA focuses on § 1111(b)(1)(A)(ii). Since Parmelys bear the burden on this motion, the Court will examine their argument in light of § 1111(b)(1)(B)(ii).

*Collier on Bankruptcy,* ¶ 1111.02[5] (1989); *See also* 3 W. Norton, *Norton Bankruptcy Law and Practice,* § 57.04 (1981). The purpose of the § 1111(b) election is to provide additional protection to a partially secured creditor in circumstances where the secured creditor believes that the collateral has been undervalued pursuant to § 506(a) or that the treatment accorded unsecured creditors under § 1129(b)(2)(B) is so unattractive that the electing creditor is willing to waive his unsecured deficiency claim. *Collier, supra,* ¶ 1111.02[5]. It is undisputed that FmHA elected to have its secured claim treated under § 1111(b). A question arises however concerning whether the FmHA should suffer because Parmelys failed to include the § 1111(b) election as to all of FmHA's collateral or whether Parmelys should suffer because the FmHA failed to object to that omission from the date of the filing of the final confirmed plan to the present.

Under South Dakota law, an estoppel arises where, by conduct or acts, a party has been induced to alter his position or do that which he would not otherwise have done to his prejudice. *In re Estate of Williams,* 348 N.W.2d 471, 475 (S.D.1984). The doctrine is bottomed on principles of morality and fair dealing and is intended to subserve the ends of justice. *Id.*

> To create an estoppel, there must have been some act or conduct on the part of the party to be estopped, which has in some manner misled the party in whose favor the estoppel is sought and has caused such party to part with something of value or do some other act relying upon the conduct of the party to be estopped, thus creating a condition that would make it inequitable to allow the guilty party to claim what would otherwise be his legal rights.

*Williams,* at 475–76 (*quoting Farmers Elevator Co. of Elk Point v. Lyle,* 90 S.D. 86, 238 N.W.2d 290, 293 (1976)). Because estoppel is equitable in nature, its application depends on the facts and circumstances of each case. *Travelers Indemnity Co. v. Swanson,* 662 F.2d 1098 (5th Cir.1981).

■ An estoppel may arise under certain circumstances from silence or inaction. The principles underlying such an estoppel are embodied in the maxim "one who is silent when he ought to speak will not be heard to speak when he ought to be silent." *Williams,* at 476, (*quoting* 28 Am.Jur.2d, Estoppel and Waiver, § 53, pp. 665–66 (1966)). However, silence or acquiescence will not work an estoppel unless there is an element of turpitude or negligence giving rise to a duty to speak and the other party is misled to his detriment. *See Rotzien v. Merchants Loan & Trust Co.,* 41 S.D. 216, 170 N.W. 128 (1918); *Willadsen v. Crawford,* 75 S.D. 161, 60 N.W.2d 692 (1953). Thus, innocent silence or inaction is insufficient to work an estoppel. *Williams, supra.*

Another equitable consideration for the Court is the doctrine of clean hands. It is a fundamental concept of equity jurisprudence that one who comes into equity must come with clean hands. 2 S. Symons, *Pomeroy's Equity Jurisprudence* §§ 397–404 (1941). This maxim has been recognized and enforced in South Dakota courts for many years. *See,* e.g., *Kane v. Schnitzler,* 376 N.W.2d 337 (S.D.1985), *Reese v. Huron Grain & Coal Co.,* 67 S.D. 9, 287 N.W. 640 (1939); *Wenzlaff v. Tripp State Bank,* 51 S.D. 447, 214 N.W. 844 (1927). A person who does not come in to equity with clean hands is not entitled to any relief and should be left in the position in which the Court finds it. *Reese, supra.* Thus, an equitable defense, such as estoppel or latches, cannot be used to reward inequities nor to defeat justice. *See Regional Properties, Inc. v. Financial & Real Estate Consulting Co.,* 752 F.2d 178 (5th Cir.1985).

The record and briefs are replete with evidence that FmHA's § 1111(b) election was timely made. It was the stipulation to § 1111(b) treatment that changed FmHA's vote on Parmelys' plan from one of rejection to one of acceptance. Without the cooperation of FmHA, Parmelys' plan may not have been confirmed. While the Court has difficulty understanding why FmHA never objected to the way its § 1111(b)

election was treated in the final version of Parmelys' confirmed plan, it is even more perplexed and concerned by Parmelys' failure to include FmHA's § 1111(b) election in the first instance, especially when FmHA's cooperation proved to be the linchpin to their plan's confirmation. Parmelys' briefs and argument before this Court failed to explain this omission; regardless, the omission constituted a unilateral and unauthorized modification of their confirmed Chapter 11 plan.

While the Court is fully aware that a strong interest to achieve finality pervades Chapter 11 arrangements, *See, e.g., Stoll v. Gottlieb,* 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); *Bohack v. Iowa Beef Processors, Inc.,* 715 F.2d 703 (2nd Cir. 1983), it cannot condone a debtor's attempt to take advantage of its own error to the detriment of a creditor who had every reason to believe that its rightful § 1111(b) election would be incorporated into the debtors' plan. Any ramifications from this deficiency should be borne by the party that is initially and ultimately responsible for the error. Parmelys' motion to enforce the provisions of their plan as written will be denied and Parmelys will be ordered to amend their plan to recognize that FmHA's § 1111(b) election extends to their real estate and chattels.

■ Parmelys also argue that the sale provision incorporated in Article X of their plan does not prohibit them from selling their property to pay off FmHA's claim. Article X of their plan provides:

*SALE OF PROPERTY*—If at any time during the term of this plan the debtors determine that it is expedient to sell land, machinery, equipment, livestock, grain or any other property, they may do so and apply the proceeds to the secured claim of any creditors who have a security interest in the property. Therefore, the secured claim will be reduced and any regularly scheduled payments to the creditor or creditors may be reduced accordingly in the amount of the sale proceeds turned over the number of payments may be reduced at the option of the debtors.

Parmelys argue that this provision passes muster under § 1111(b)(1)(B)(ii) which provides:

A class of claims may not elect application of paragraph (2) of this subsection if—

(ii) the holder of a claim of such class has recourse against the debtor on the amount of such claim and the property is sold under section 363 of this title or is to be sold under the plan.

FmHA contends that the plan's sale provision is not sufficiently specific to prevent the § 1111(b) election, relying primarily upon *In re Western Real Estate Fund, Inc.,* 75 B.R. 580 (Bkrtcy.W.D.Ok.1987). The Court agrees with FmHA's conclusion, but with reliance upon different authority.

Section 1111(b)(1)(B)(ii) provides an exception to the § 1111(b) election. Under § 1111(b)(1)(B)(ii), the § 1111(b) election will be precluded if the holder of the claim has recourse against the debtor and the property is to be sold under § 363 or sold under the plan. The rationale for this exception to the § 1111(b) election is that "a secured creditor who has the opportunity to protect his position by bidding in debt at the sale of his collateral and recovering his collateral, has the benefit of his bargain and requires no special protection." *Collier, supra,* at ¶ 1111.02[4]. Implicit in this rationale is that § 1111(B)(ii) is intended to preclude the § 1111(b) election where a Chapter 11 plan contemplates liquidation. *See In re Union Square Associates Ltd.,* 53 B.R. 532 (Bkrtcy.E.D.Ark.1985).

It is clear that Parmelys' Chapter 11 plan is one intended to reorganize their operation rather than to liquidate it. Their sale provision does not permit the FmHA, an undersecured recourse creditor, to "credit bid" its claim. Such a creditor is not precluded from making a § 1111(b) election regardless of the literal prohibition set forth in § 1111(b)(1)(B)(ii). *In re Waterways Barge Partnership,* 104 B.R. 776 (Bkrtcy.N.D.Miss.1989). Thus, FmHA's § 1111(b) election will not be precluded and Parmelys' motion in this respect will be denied.

This constitutes the Court's findings of fact and conclusions and law in this matter. This is a core proceeding pursuant to 28 U.S.C. § 157(b). The Court will enter an appropriate order.

Pursuant to the letter memorandum executed this same date,

IT IS HEREBY ORDERED that debtors' motion to enforce the provisions of their Chapter 11 plan is hereby denied.

IT IS FURTHER ORDERED that debtors amend their Chapter 11 plan to recognize that the § 1111(b) election made by Farmers Home Administration extends to debtors' real estate and chattels.