WENZLAFF, Respondent, v. TRIPP STATE BANK et al,
Appellant.

(214 N. W. 844.)

(File No. 5644.    Opinion filed July 9, 1927.)

1.  **Mortgages—Transaction by Which Mortgage on Bank Property
    Was Assigned by Bank to Former Officer as Security for
    President's Notes and to Pay for Mortgage Assigned Bank in
    Satisfaction of Stock Assessment Held Illegal.**

    Transaction by which mortgage held by bank on its property
    was assigned by bank to former officer to secure notes owing
    by president to assignee and to pay for note and mortgage as-
    signed bank in satisfaction of stock assessment held illegal,
    where superintendent had previously required transfer of prop-
    erty to bank, which bank had reconveyed to president.

2.  **Banks and Banking—Bank Held Chargeable with Knowledge of
    Alleged Intent of President to Deceive Superintendent by Hav-
    ing Bank Assign Mortgage on Its Property.**

    Bank held chargeable with knowledge of president's alleged
    intent to deceive superintendent of banks in transaction by
    which bank assigned mortgage on its property to former officer .
    to secure president's notes and pay for mortgage received to
    satisfy stock assessment.

3.  **Equity—Persons coming into Court with Unclean Hands Are Not
    Entitled to Affirmative Relief.**

    Those who come into court with unclean hands are not in
    position to ask affirmative relief, and court may properly refuse
    to entertain suit in their behalf.

4.  **Equity—Equity, Having Assumed to Act, Must Do Complete Jus-
    tice, Though Litigants Came into Court with Unclean Hands.**

    Where equity has assumed to act, it must do complete jus-
    tice, regardless of whether litigants originally came into court
    with unclean hands.

5.  **Cancellation of Instruments—Cancellation of Mortgage Rescinds
    Transaction and Entitles Parties to Be Placed in Status Quo.**

    Where mortgage is canceled, transaction is rescinded and
    each party is entitled to be placed in his original position as
    though transaction had not been had.

6.  **Cancellation of Instruments—On Cancellation of Mortgage on
    Bank's Property, Assigned Plaintiff's Husband, Plaintiff in
    Foreclosure Suit Thereon Held Entitled to Return and Foreclo-
    sure of Mortgage Assigned Bank as Part of Same Transaction.**

    On cancellation of mortgage on bank's property which bank
    assigned to plaintiff's husband, who, in turn, assigned to plain-

tiff, plaintiff in suit for foreclosure of such mortgage held entitled to return and foreclosure of mortgage which was assigned bank as part of same transaction.

7. **Cancellation of Instruments—In Foreclosure Suit, Creditors Held Not Prejudiced by Requirement that Bank Surrender Mortgage Received as Part of Illegal Transaction.**

In suit against bank for foreclosure of mortgage, requirement that bank return mortgage which it received as part of illegal transaction held not to prejudice rights of creditors, who were not parties.

8. **Cancellation of Instruments—Creditors of Bank, Who Have Not in Good Faith Changed Their Position as Result, Are Not Entitled to Benefit of Bank's Illegal Transaction.**

Creditor of bank has no right to benefits of illegal transaction by which bank acquires property, unless creditor, in good faith, acted upon such transaction and changed his position so that denial of benefits would constitute fraud on him.

Gates and Sherwood, JJ., dissenting.

---

Note.—See, Headnote (1), American Key-Numbered Digest, Mortgages, Key-No. 11, 41 C. J. Sec. 155; (2) Banks and Banking, Key-No. 116(6), 7 C. J. Sec. 136; (3) Equity, Key-No. 65(1), 21 C. J. Secs. 163, 177; (4) Equity, Key-No. 65(1), 21 C. J. Sec. 172; (5) Cancellation of Instruments, Key-No. 59, 9 C. J. Sec. 225 (Anno.); (6), (7), (8) Key-No. 59, 9 C. J. Sec. 235.

On the general rule that he who comes into equity must come with clean hands, see annotations in 4 A. L. R. 44, et seq.; 10 R. C. L. 289-391; 2 R. C. L. Supp. 1008; 4 R. C. L. Supp. 664; 5 R. C. L. Supp. 553; 6 R. C. L. Supp. 610.

As to necessity of placing other party in status quo on rescission, of contract, see 4 R. C. L. 512; 1 R. C. L. Supp. 1155; 5 R. C. L. Supp. 245; 6 R. C. L. Supp. 257.

Appeal from Circuit Court, Hutchinson County; Hon. R. B. Tripp, Judge.

On rehearing. Directions to trial court in former opinion withdrawn, and judgment and order appealed from modified, with directions.

For former opinion, see 50 S. D. 6, 208 N. W. 222.

*Hitchcock & Sickel,* of Mitchell, for Appellant.
*French, Orvis & French,* of Yankton, for Respondent.

BURCH, J. This case is before us on rehearing. The former opinion is reported in 50 S. D. 6, 208 N. W. 222. Here

we state only such facts as are necessary to an understanding of the question now before us, referring to the former opinion for such other facts as may be desired.

Plaintiff brought the action to foreclose a $17,500 mortgage on the Tripp State Bank building, executed by Waldemar Wenzlaff, president of the bank, as mortgagor, to the bank, as mortgagee. Waldemar Wenzlaff held the record title to the building. In our former opinion this mortgage was held invalid because the bank was the true owner of the building. Plaintiff obtained the mortgage by an assignment without consideration from her husband, Salomon Wenzlaff, father of the cashier, Waldemar, and it is conceded her rights are no greater than those of Salomon would have been, if he had brought the action.

[1] For a considerable time Salomon had been an officer of the bank. During the summer and fall of 1920, the superintendent of banks had made repeated demands on the bank officers to take out a large amount of paper resulting from personal dealings of the officers. The superintendent of banks was insisting on the elimination of this paper and also demanding that the bank make good its reserve, when the name of Salomon as an officer was scratched off the letter heads of the bank. On August 7th, the superintendent noticed this and objected to recognizing any transfer of stock until the items were eliminated as requested and the bank's assets made good. The superintendent's requirements were not complied with and finally all the stock of the bank was assessed 100 per cent, and on June 27, 1921, Waldemar wired his brother, Edgar, as follows:

"See Salomon send at once Chrismann twelve thousand See twelve thousand Goldhammer seven thousand and notes I can get nine thousand here to make Hirnings forty thousand and wire can protect you both."

Hirning was superintendent of banks. The bank's capital stock was $40,000. Following this telegram Edgar came to the Tripp State Bank, and in the negotiations there, as agent of Salomon, obtained an assignment of the said mortgage of $17,500 from the bank to secure three notes owing by Waldemar to Salomon and in payment of the Goldhammer note and mortgage to be assigned to the bank. From the entire record it is plain that this transaction was in furtherance of a scheme to raise the assessment

29—Vol. 51, S. D.

on the stock and that Waldemar was attempting to raise the entire amount, although some of the stock must have stood on the books of the bank as belonging to other officers, Salomon as one, if he was still a stockholder. The equities are not changed simply because the Goldhammer mortgage was assigned directly to the bank. The legal effect was a sale of the Goldhammer mortgage to Waldemar and the assignment of such mortgage by Waldemar to pay his assessment.

[2-4] The case must be decided on equitable principles. The transaction was illegal. Salomon had guilty knowledge of Waldemar's intent to deceive the superintendent of banks, and so did the bank 'through its president, Waldemar. Salomon, Waldemar, and the bank came into court with unclean hands, and none were in position to ask affirmative relief. This court would have been justified in refusing any relief and might have properly refused to entertain the suit and dismissed it. But this was not done. Instead, relief was granted and the mortgage canceled upon the prayer of the bank. Equity, having assumed to act, must do complete justice. Justice is of the same quality whether meted to saint or sinner.

[5, 6] Where the mortgage is canceled, the transaction is rescinded, and each party is entitled to be placed in his original position as though the transaction had not been had. Nor is the position of the bank any different because the bank received the Goldhammer mortgage for the assessment legally owing to it. When it received the mortgage from its creditor, Waldemar, it did so with full knowledge that Waldemar received it through an illegal transaction, which, as soon as set aside, leaves the assignment of the Goldhammer mortgage without consideration and void. Plaintiff is therefore entitled to have such mortgage returned as the final step in effecting a rescission of the illegal transaction.

[7, 8] Lest some may think we have overlooked the rights of creditors of the bank, we make this observation. The creditors' rights are not involved in this suit. It is in no sense a creditors' suit, nor are their rights involved in the answer of the bank. Nowhere does it appear that any of the creditors were affected by the transaction. True, the creditors might receive larger dividends if the bank could retain its ill-gotten gains, but that does not make it right for them to do so. No creditor has a

right to the benefits of the transaction unless it be shown that such creditor, in good faith, acted upon such transaction or the consequences thereof, and has so changed his position that to deny him its benefits would defraud him.

The directions to the trial court in our former opinion are withdrawn, and the judgment and order appealed from are modified with direction to the trial court to find the value of the Goldhammer mortgage and enter judgment of foreclosure for that amount, with interest and costs, to find against plaintiff as to the balance of the debt sought to be recovered, and to decree that upon the payment of such judgment the mortgage shall be fully paid and satisfied. Costs to be taxed in this court in favor of defendants and appellants.

CAMPBELL, P. J., and POLLEY, J., concur.
GATES and SHERWOOD JJ., dissent.