REESE, et al, Appellants, v. HURON GRAIN & COAL
COMPANY, et al, Respondents

(287 N. W. 640.)

(File No. 8232.   Opinion filed October 3, 1939.)

**Chas. P. Warren,** of Pierre, and **Max Royhl,** of Huron,
for Appellants.

**Churchill & Benson,** of Huron, for Respondents.

POLLEY, J.   The defendant, Huron Grain & Coal Com-
pany, hereinafter referred to as the company, is a corpora-
tion engaged in the grain and coal business in the city of
Huron.   Plaintiff, Sheldon F. Reese, is a competitor of the
company dealing in coal, grain and feed on a large scale in
Huron and vicinity.   All of the plaintiffs, and defendants,
except the company, are stockholders in the company.   Dif-
ferences arose among the stockholders that divided them
into two factions, each faction desiring control of the com-

pany. The individual defendants constitute the present board of directors and officers of the company.

The plaintiffs, other than Sheldon F. Reese, are either in his employ or are using their endeavor in his behalf. They constitute the opposing faction and brought this action on the equity side of the court, asking the court, in effect, to oust the individual defendants, as directors and officers of the company, and install plaintiffs in their places.

Upon hearing the testimony the court invoked the ancient equity maxim: "He who comes into a court of equity must come with clean hands," and held that Mr. Reese had acted in bad faith in his manner of attempting to acquire a controlling interest in the company, and that he was not in court "with clean hands," and dismissed plaintiffs' complaint. The facts upon which the court reached its conclusions are set out in great detail in the following Findings of Fact made by the trial court:

1. "The defendant, Huron Grain & Coal Company is and at all times herein referred to has been a corporation duly organized and existing under the laws .of the State of South Dakota, with its principal place of business in the City of Huron, Beadle County, South Dakota; and the business of said Company at all said times has been the purchase, sale, and dealing in, of grain, feed and coal.

2. "That since on or about January 12, 1935, the defendants T. H. Hill, Delbert E. McDaniel, W. H. Gamble, N. L. Swarm, and Otto Kuehn, have been and constituted the Board of Directors of said Corporation, and have conducted and had control of the management of its business and property. That during said period of time the defendant T. H. Hill has been the President of said Company; the defendant Delbert E. McDaniel has been its Manager in actual and immediate charge of the conduct of its business; and the defendant Irwin A. Churchill has been the legal advisor of the Corporation and its Board of Directors.

"The said defendant Directors were also stockholders of the defendant Corporation, and they and persons in agreement with them as to the policy of the Corporation

were the owners of a majority of the stock of said Corporation. There was at said time some controversy among the stockholders of said Corporation, and holders of a minority of the stock of said Corporation were dissatisfied with the management and policies thereof.

3. "That the said Corporation was organized on or about December 1, 1922, and its capital stock subscribed and issued at about that time, and subsequent to its said organization no additional stock in said Corporation was subscribed, sold, or issued until on or about January 15, 1936 and March 5, 1936, as hereinafter found. That from time to time certain of the capital stock of said Corporation has been acquired by the Corporation and from August 5, 1931 to January 15, 1936 the subscribed and outstanding capital stock of said Corporation other than such Company-held stock has been two hundred ninety-four (294) shares of the par value of Twenty-five dollars ($25.00) each.

4. "The plaintiff, Sheldon F. Reese, is and for a considerable time prior to the year 1935 was engaged in business in the City of Huron and elsewhere in buying and selling grain, feed and coal. The plaintiff, M. F. Reese, is the mother of Sheldon F. Reese; plaintiff, F. B. Reese, is the father of Sheldon F. Reese; and plaintiff D. McNallan is an employee of Sheldon F. Reese; and the stock in Huron Grain & Coal Company purchased by plaintiff McNallan was purchased in part with funds furnished to him by Sheldon F. Reese.

"In the conduct of his said grain and feed business, Sheldon F. Reese purchased a large amount of grain for resale as feed at the various places of business conducted by him; and in 1935 was desirous of purchasing from defendant Huron Grain & Coal Company the feed grain taken in by it. At this time, however, defendant Huron Grain & Coal Company, had a loan of approximately $8,000.00 from a creditor in Minneapolis, and as part of its agreement in procuring said loan had agreed to market all of its grain through said creditor. In the Spring of 1935 plaintiff, Sheldon F. Reese, arranged to loan to defendant, Huron Grain & Coal Com-

pany, the sum of approximately $8,000.00 with which to pay off its Minneapolis creditor and satisfy the claim of said Minneapolis creditor and discharge the control which said Minneapolis creditor had over the marketing of grain and the management of the business of Huron Grain & Coal Company. As security for said loan plaintiff Sheldon F. Reese, took a note of Huron Grain & Coal Company, secured by a chattel mortgage on its elevator warehouse and coal shed properties, and also as a condition to making said loan insisted that there be procured for him certain shares of stock in the defendant Corporation as hereinafter found.

5. "The arrangements for said loan were conducted by plaintiff, Sheldon F. Reese, on the one hand, and by defendants T. H. Hill, Delbert E. McDaniel and other of the Directors of the defendant Corporation acting on its behalf; and in conducting said negotiations and in making said agreement for a loan and for the purchase of grain by said Reese from the defendant Corporation, the plaintiff, Sheldon F. Reese, stated and represented to the officers and directors of the defendant Corporation in charge of such negotiations in effect that he wanted some of the stock of defendant Corporation to hold during the term of his loan in order to insure the continuance of the then management until his loan was repaid; that he did not want to get control of the Corporation or a majority of its stock; and that when his loan was repaid he would return and reconvey to the said parties or someone designated by them the amount of stock which they procured for him, at the price which he had paid for it.

"Pursuant to said agreement, defendant officers and directors of defendant Corporation arranged for and brought about the transfer of twenty-four (24) shares of stock from Will Whitney, for $200.00, and twenty-four (24) shares of stock from the estate of L. C. Tredway, for $200.00. The transfer of all of this stock to plaintiff Sheldon F. Reese was made about March, 1935. The owners of this stock belonged to the group that supported defendant Directors in the management of the affairs of defendant Company, and said stock could not have been purchased by plaintiff, Shel-

don F. Reese, except for the intervention and persuasion of said defendants. And plaintiff, Sheldon F. Reese, without the assistance of defendant Directors purchased other stock for himself or his co-plaintiffs from owners who were opposed to the management of defendant Directors, but not in such amount as to give plaintiffs control of the Corporation. In this manner the plaintiffs bought up all, or substantially all, of the stock of those stockholders who opposed the management of defendant Directors.

"And on or about June 25, 1935, the plaintiff, Sheldon F. Reese and defendants McDaniel, Hill, Gamble, and Kuehn, executed a Memorandum in the following form:

### " 'Memorandum of Agreement

" 'This Agreement, made and entered into this 25th day of June, 1935, by and between F. W. Kuehn, W. H. Gamble, T. H. Hill and Delbert McDaniel, of Huron, South Dakota, parties of the first part, and Sheldon F. Reese, of Huron, South Dakota, party of the second part, WITNESSETH: That for and in consideration of the payments hereinafter specified, said parties of the first part hereby agree to procure and deliver to said party of the second part sufficient of the outstanding stock certificates representing the capital stock of the Huron Grain and Coal Company in amount sufficient when added to the capital stock of said Huron Grain & Coal Company now owned by said party of the second part he will own not less than 48 per centum of the capital stock of said corporation.

" 'Said party of the second part hereby agrees to accept such stock certificates from parties of the first part when presented duly assigned and pay parties of the first part therefore at the rate of $200.00 for each 24 shares of capital stock assigned. This contract shall be fully performed within one year from the date thereof.

" 'In Witness Whereof, the parties hereto have set their hands the day and year first hereinabove written.

" 'Dated at Huron, South Dakota, this 25th day of June, 1935.

" 'Signed:

" 'D. E. McDaniel
" 'T. H. Hill
" 'W. H. Gamble
" 'Otto Kuehn
" 'Parties of the First Part.

" 'Sheldon F. Reese,
" 'Party of the Second Part.

" 'In the presence of:
" '(Signed)
" 'Chas. P. Warren' "

6. "On or about said 25th day of June, 1935, plaintiff, Sheldon F. Reese, turned over the loan, in the sum of about $8,000.00 to defendant Corporation upon the terms and conditions as hereinbefore found, and defendant Corporation paid off its indebtedness to its Minneapolis creditor; which loan was made for the term of one year, with interest at the rate of 6 per cent, and was at or shortly following its maturity, paid off.

7. "In December, 1935, it came to the attention of defendant Directors that plaintiff, Sheldon F. Reese, after having completed the arrangements for the making of a loan and having made said loan as hereinbefore found, continued his efforts to buy stock in defendant Corporation and was soliciting the purchase of such stock from stockholders friendly to and supporting the management of defendant Corporation and had purchased a certain amount of said stock, to-wit: the twenty-four (24) shares of Murly stock.

8. "Thereafter, and in the month of December, 1935, it came to the attention of defendant Directors that plaintiff, Sheldon F. Reese, was endeavoring to buy twenty-four (24) shares of stock belonging to the estate of Carl Zeeck, deceased. In order to prevent plaintiffs from acquiring this stock and thereby acquiring control of the defendant Corporation, defendant McDaniel bid in the Zeeck stock for $275.00 for himself, and temporarily used funds of defendant Corporation to pay for same, but without any intention of mak-

ing such purchase on behalf of the Corporation; and said stock was transferred to Delbert McDaniel, Trustee, on January 15th, 1936. The use of said Corporation money by the defendant McDaniel in the manner herein found was with the knowledge and consent of the Directors of the Corporation.

"On December 23, 1935, at a meeting of the Directors of the Corporation, proceedings as follows were had:

" 'Dec. 23, 1935.

" 'Adjourned meeting called to order by the President with the following present: T. H. Hill, N. L. Swarm, Otto Kuehn, D. E. McDaniel, and W. H. Gamble.

" 'Moved by N. L. Swarm, seconded by Otto Kuehn that D. E. McDaniel be appointed trustee for any stock that would be bought so that it can be voted at a stockholders' or annual meeting temporarily.

" 'Auditing discussed and the majority was in favor of having Wm. Nielsen as soon as he would be able to come.

" 'Motion to adjourn.

" '(Signed) W. H. Gamble.'

"Thereafter and on or about March 5, 1936, defendant Corporation was reimbursed in full for the funds so used, and said twenty-four (24) shares of stock were re-issued as follows: Eight (8) shares to Delbert McDaniel, and sixteen (16) shares to Irwin A. Churchill.

9. "The By-Laws of defendant Corporation contain provisions, among others, as follows:

" 'Article 2, Section 3: Treasury Stock shall be held by the Corporation subject to disposal by the Board of Directors; and shall neither vote nor participate in dividends.

" 'Article 3, Section 2: A special meeting of stockholders, to be held at the same place as the annual meeting, may be called at any time by the President, and in his absence, by the Vice President; or by the Directors. It shall be the duty of the Directors, President, or Vice President, to call such a meeting whenever so requested by stockholders holding twenty per cent or more of the capital stock.'

" 'Section 8: The stockholders shall have power by a majority vote at any such meeting, to remove any director or officer from office.'

10. "At a special meeting of the Directors, at which all directors were present, held on March 5, 1936, the following Resolution was unanimously adopted:

" 'Resolved: That the sale of eight (8) shares of the Treasury or re-issued stock of the Corporation to Irwin A. Churchill, of Huron, South Dakota, at the par value thereof, to-wit, $200, be approved, ratified, and confirmed.'

"This resolution referred to the sale by the Corporation and the purchase by defendant Churchill of eight (8) shares of the Treasury stock of the Company, for which Certificate was issued on January 15, 1936, and for which said defendant paid to the Corporation the sum of Two Hundred Dollars ($200.00).

11. "Upon demand of plaintiffs, there was called a special meeting of the stockholders of defendant Corporation, to be held at 7:30 o'clock p. m. on March 12, 1936, at which time there were present stockholders holding shares of stock of the Corporation as follows:

| | |
|---|---|
| "T. H. Hill | 24 shares |
| "N. L. Swarm | 24 shares |
| "Otto Kuehn, Administrator | 24 shares |
| "W. H. Gamble | 24 shares |
| "D. E. McDaniel | 32 shares |
| "Irwin A. Churchill | 24 shares |
| "Sheldon F. Reese | 72 shares |
| "W. C. Foresman | 24 shares |
| "F. B. Reese | 3 shares |
| "W. G. Stahly | 3 shares |

"At this meeting there was some question as to whether Sheldon F. Reese was entitled to vote the 24 shares of W. T. Whitney and the 24 shares of W. D. and J. C. Murley stock as his own or by proxy. He held such proxies and filed the same, and was permitted to, and did, vote the said stock by proxy.

"At said meeting, among other business transacted, the

following occurred, as appears from the minutes of said meeting:

" 'It was moved by Sheldon F. Reese, seconded by W. C. Foresman, that the present Board of Directors be removed and a new Board elected. This motion was based on a provision in the By-laws providing for such action. On the vote being taken, 150 shares voted "Yes" and 152 shares voted "No". The motion was declared lost.'

"The shares so voting 'No' were as follows: T. H. Hill, N. L. Swarm, Otto Kuehn, Administrator, W. H. Gamble, D. E. McDaniel, and Irwin A. Churchill.

12. "The Foresman stock, numbering 24 shares, was transferred on the books of the Company to plaintiff, M. F. Reese, on July 3, 1936; the W. H. Stahly stock, numbering 3 shares, was transferred to plaintiff, F. B. Reese, July 3, 1936; the Murley stock, numbering 24 shares, was transferred to plaintiff, D. McNallan, on July 3, 1936.

13. "The purpose of the defendant Directors in countenancing and consenting to the use by the defendant McDaniel of Company funds for the purchase by him of the Zeeck stock as hereinbefore found and in authorizing and confirming the sale of eight (8) shares of Treasury stock, or Company-held stock, to the defendant Churchill as hereinbefore found, was to prevent the plaintiff, Sheldon F. Reese, and the other plaintiffs acting in concert with him from securing control of the defendant Corporation.

14. "The action of plaintiff, Sheldon F. Reese, in acquiring enough additional stock of defendant Corporation to give him and his associates a majority of the stock of the Corporation and the right to vote out the existing Board of Directors and vote in himself and associates, except for the issuance of eight shares of Treasury Stock to defendant Churchill, as hereinbefore found, was an act of bad faith on the part of plaintiff, Sheldon F. Reese, in violation of his agreement with defendant Board of Directors at the time he was negotiating the loan to them; and the plaintiff, Sheldon F. Reese, and his co-plaintiffs acting together and in concert to thus acquire control of defendant Corporation are in Court in this case with unclean hands."

In their complaint plaintiffs ask that the court adjudge, that the certificate No. 26 for 8 shares of stock and certificate No. 32 for 16 shares of stock issued to I. A. Churchill; and certificate No. 31 for 8 shares of stock issued to Delbert McDaniel are fraudulent, unlawful and void, and that said certificates be cancelled; that the defendants be perpetually enjoined and restrained from hereafter selling or offering for sale any of the corporate stock or issuing any stock in the company, without first giving the then stockholders due notice of such contemplated additional stock issue and reasonable opportunity to each of such stockholders to purchase his proportionate share of such stock. It does not appear from the record that there were any restrictions on the board of directors in the disposition of the treasury stock, nor of the unissued capital stock.

In reply to the conclusion of the court that Mr. Reese was acting in bad faith with the other stockholders when he, without the knowledge of the defendants, undertook to acquire a majority of the outstanding stock, he claims that he did not agree that he would, under no circumstances, acquire more than 48% of the outstanding stock and cites the memorandum agreement that was entered into June 25, 1935, when the $8000 loan was made. True, Mr. Reese did not say, in so many words, in the memorandum agreement that he would never attempt to acquire a majority of the stock, but he did say that: "He wanted some of the stock of the corporation to hold during the term of his loan in order to insure the continuance of the then management until his loan was paid; that he did not want control of the corporation or a majority of its stock; and that when his loan was repaid he would return and reconvey to the said parties or someone designated by them the amount of stock they procured for him at a price at which he had paid for it." The record shows, and the trial court found, that the purchase of stock by Reese to gain control of the corporation, "was an act of bad faith on the part of plaintiff, Sheldon F. Reese, in violation of his agreement with defendant Board of Directors at the time he was negotiating the loan to them."

Appellants invoke Section 860, R. C. 1919, SDC 10.0604, also to the effect that when the memorandum agreement was entered into it superseded all oral negotiations that preceded the execution of said agreement. This also is true, but it is not material. This is not a suit to enforce or resist compliance with a written agreement, nor for specific performance. The question here is: Was Mr. Reese acting in bad faith when he attempted to acquire a majority of the outstanding stock in the Company after having represented to defendants that he did not want to get control of the company nor a majority of its stock, but only enough to insure the continuance of the then management of the Company until his loan was paid? The defendants assumed that plaintiffs were acting in good faith, though they showed most childish simplicity in so doing, and entered into the written agreement upon the absolute assumption that Mr. Reese would keep his word and not attempt to get control of the Company.

The doctrine of "unclean hands" has been upheld by courts of equity throughout the history of equity jurisprudence (21 C. J. 180) and by this court as occasion has arisen; Wenzlaff v. Tripp State Bank, 51 S. D. 447, 214 N. W. 844; Meade County Bank v. Fredericks et al., 41 S. D. 510, 171 N. W. 607. In Cross v. Farmers' Elevator Co., 31 N. D. 116, 153 N. W. 279, 283, 4 A. L. R. 13, the facts are almost exactly parallel with the facts in the present case. In that case the North Dakota Court in denying the plaintiff the relief sought says: "We agree thoroughly with the finding of the trial court that he [plaintiff] does not come into equity with clean hands, and that he is not entitled to any relief herein, but should be left in the position in which the court finds him."

For a general discussion of the doctrine of unclean hands, see Note, 4 A. L. R. pp. 44-107. The trial court was fully justified in finding that Mr. Reese did not act in good faith with defendants and was not in court with clean hands.

The judgment and order appealed from are affirmed.

WARREN, P.J., and ROBERTS and RUDOLPH, JJ., concur.

SMITH, J., dissents.