George KANE, Plaintiff and Appellant,

v.

Detlef SCHNITZLER and Faith Schnitzler, Defendants and Appellees.

Nos. 14772, 14783.

Supreme Court of South Dakota.

Considered on Briefs Sept. 12, 1985.

Decided Oct. 30, 1985.

David L. Braun of Gors, Braun & Carlon, Pierre, for plaintiff and appellant.

Thomas E. Brady of Richards, Hood & Brady, Spearfish, for defendants and appellees.

HERTZ, Acting Justice.

This is an appeal from a judgment denying rescission of a license agreement and addendum for purchase. George Kane, plaintiff and appellant (Kane), initiated this action seeking both rescission of the agreements, and damages for sellers fraudulent

conduct. Detlef and Faith Schnitzler (Schnitzlers), defendants and appellees, counterclaimed alternatively for damages or specific performance pursuant to Kane's breach of an assignment for sublease. The trial court denied rescission of the agreements and damages to Kane, as well as denying Schnitzlers relief on their counterclaim. We affirm.

On February 27, 1981, George Kane entered into a purchase agreement with Faith and Detlef Schnitzler for the purchase of Dancenastics Mademoiselle, an aerobics/dance franchise located in Rapid City, South 'Dakota. That as of said date, all terms and conditions of the purchase had been negotiated and the downpayment was made. The sale was closed on March 16, 1981. Kane paid $45,179.47 to Schnitzlers for the dance studio franchise and various items of personal property associated therewith. As part of the transaction and sale on March 16, 1981, Kane entered into a license agreement, an addendum for purchase, and an assignment of sublease with Faith Schnitzler for the studio's leased premises. Pursuant to the sublease, Kane, as Schnitzlers' assignee, assumed all obligations and responsibilities under the sublease entered into between Faith Schnitzler and Oakland Development Company, Inc. That as of said date, Kane entered into a management agreement with Glen and Mary Kane, his son and daughter-in-law, as agents to operate the business.

During the course of negotiations, Kane and his agents repeatedly questioned Schnitzlers in regard to employee relations at Dancenastics. Schnitzlers told Kane that no labor problems existed at the studio. However, on March 1, 1981, two key Dancenastics employees, Debra Brown (Brown) and Cindy Scallon (Scallon), approached the Schnitzlers about a wage increase at their home in Spearfish. At this point, the evidence becomes conflicting. Scallon testified that Schnitzlers offered to pay her and Brown ten percent of the expected sale price of Dancenastics in exchange for their promise not to make any trouble insofar as the Schnitzler to Kane transaction was concerned. Schnitzlers

claimed that the money was offered to provide the necessary training services as required by the license agreement. Nevertheless, it was undisputed that the employees accepted the offer, and the subsequent sale of Dancenastics to Kane was finalized on March 16, 1981.

When Schnitzlers failed to pay Brown and Scallon as promised, Brown and Scallon quit their jobs with the studio on April 6, 1981. Kane testified that he first became aware of the Schnitzler-Brown-Scallon agreement on November 11, 1981. The trial court found Kane's right to rescission existed on April 6, 1981. However, despite notice of labor problems at Dancenastics, Kane continued to comply with the terms of the franchise agreement. Moreover, he continued to retain possession of the subleased premises, made rental payments thereon, continued to make payment of franchise fees, and continued to receive benefits of the business operation until the studio was closed by Kane with little or no notice to Schnitzlers on May 31, 1982.

Kane commenced action on January 18, 1982, wherein he sought alternatively rescission of the license agreement, addendum for purchase and return of all payments made to Schnitzlers, or damages. Thereafter, he amended his complaint in order to seek rescission only on April 28, 1983. At the close of his case-in-chief, Kane moved for amendment of his prayer for relief to include rescission of the assignment of sublease. Schnitzlers counterclaimed alternatively for damages or specific performance pursuant to Kane's alleged default on the sublease.

The trial court denied Kane's motion to amend his prayer for relief to include rescission of the assignment of sublease on the ground that it exceeded the scope of the allegations pleaded in the amended complaint. Secondly, the trial court held that Kane waived his right to rescission through conduct which in affect affirmed the contract compounded by his failure to timely rescind. Thirdly, Kane was denied damages because the trial court found

them speculative at best, and further found it impossible to distinguish the amount of detriment caused by the Schnitzlers from the detriment caused by Kane's own poor business practices and procedures. Finally, the trial court denied Schnitzlers counterclaim in light of their false representations in regard to the nonexistence of labor problems at Dancenastics.

On appeal, Kane contends that he did not waive his right to rescission, that he was entitled to damages as a result of Schnitzlers' fraud, and that his motion to amend both the complaint and prayer for relief should have been granted. Schnitzlers appeal from those portions of the judgment which found their representations to be false, and which denied them relief on their counterclaim.

Initially, we examine whether Kane waived his right to rescission based upon Schnitzlers' misrepresentations pursuant to labor relations at the studio. The trial court found, and we agree, that the Schnitzlers defrauded Kane in the purchase of Dancenastics. Testimony at trial supported the fact that Kane was concerned about the possibility of labor problems at Dancenastics. As such he repeatedly questioned Schnitzlers about this matter. Detlef Schnitzler testified that he assured George, Glen and Mary Kane that no such problems existed. However, three weeks prior to the sale of the business, the Schnitzler-Brown-Scallon side agreement was perfected. At trial, Detlef Schnitzler testified that he offered the money to Brown and Scallon in order to assure a smooth transfer of Dancenastics to Kane, and to further assure their continued employment.

We, therefore, affirm the trial court's finding that Kane believed the representations in regard to the nonexistence of labor problems to be true at the time of entry into the contract. Furthermore, we find that Kane relied on the representations as an inducement to enter into the contract. Kane argues, however, that his continued compliance with the terms and conditions of the license and purchase agreements

until May 31, 1982, did not waive his equitable right of rescission because he did not elect to rescind the agreements until April 28, 1983. We disagree.

The facts which entitled Kane to rescind the license agreement and addendum thereto arose at the earliest on April 6, 1981, when Brown and Scallon terminated their employment with Dancenastics; or at the latest on November 11, 1981, when Kane testified that he had knowledge of the Schnitzler-Brown-Scallon agreement. Despite actual notice of Schnitzlers' misrepresentations, Kane continued to pursue a course of conduct which amounted to an affirmation of the contract. " 'A "waiver" is a voluntary abandonment of a known existing right...' " *Northwest Realty Co. v. Carter*, 338 N.W.2d 669, 670 (S.D.1983), quoting from *Hood v. Sioux Steel Co.*, 67 S.D. 1, 7, 287 N.W. 636, 639 (1939) (citation omitted). Kane acquired his right to rescission through SDCL 21–12–1 and SDCL 53–11–2. As such, SDCL 53–11–4 is relevant, and provides in part "[that] [t]he party rescinding a contract must rescind promptly, upon discovering the facts which entitle him to rescind[.]" The trial court found the holding in *Northwest Realty, supra*, controlling on this issue. We agree.

In *Northwest Realty*, we held that a purchaser who made a $7,125.00 interest payment after discovering misrepresentation as to a water system, waived his right to rescission of a contract for deed in regard to the defective water system. Applying this rationale to the instant case, it is clear that Kane failed to use reasonable diligence to rescind the agreements. Taking as true Kane's statement that he had knowledge of the Schnitzler-Brown-Scallon agreement on November 11, 1981, he nevertheless continued to make franchise fee and sublease payments as well as continued to fully comply with the terms of the contract for a period of seven months after notice of Schnitzlers' fraud. As was said in *Northwest Realty*, failure to promptly rescind after discovering fraud precludes rescission.

Not only must a party rescind promptly, he must also tender anything received pursuant to the contract. Kane has done neither in this case.

The general rule is stated as follows in 17 Am.Jur.2d *Contracts* § 489, (1964) at page 961:

"Delay in asserting a right to rescind may constitute a waiver. A party to a contract who, after discovery or knowledge of facts which would entitle him to rescind, treats the contract as a subsisting obligation and leads the other party to believe that the contract is still in effect waives his right to rescind. Furthermore, a rescission to be effective must be adhered to or it is waived, and an assertion of rescission or termination of a contract is nullified by the subsequent acceptance of benefits growing out of the contract."

Kane argues that any delay in asserting his right to rescind in this case was reasonable and therefore the rule of waiver is inapplicable. The rule in this regard is stated in 17 Am.Jur.2d *Contracts* § 510, on page 992:

"Many cases have held that a right to rescind, abrogate, or cancel a contract must be exercised promptly on discovery of the facts from which it arises, and that it may be waived by unreasonable delay or by continuing to treat the contract as a subsisting obligation. The correlative rule is that the right to rescind must be exercised within a reasonable time, or with 'reasonable promptness,' after discovery of the facts from which it arises. According to some cases, however, the question as to whether a contract has been rescinded within a proper time therefor is not necessarily to be determined by the particular amount of time which has elapsed before the attempted rescission, the important consideration being whether the period has been long enough to result in prejudice to the other party."

It is apparent that the element of time is not conclusive in and of itself. The further query must be whether the delay was long enough to prejudice the other party (Schnitzlers). That Schnitzlers were indeed prejudiced by Kane's delay in asserting rescission is amply supported in the record.

Accordingly, we affirm the trial court's finding that Schnitzlers false statements created a right of rescission in Kane. This right was extinguished, however, due to Kane's performance under the contract and his failure to promptly rescind which amounted to a waiver of his right to rescission. In light of our disposition of this issue, Kane's argument in regard to amending his prayer for relief is moot. Similarly, we need not reach Schnitzlers' contention upon notice of review that their representations were not false.

Kane next contends that he was entitled to an award of damages in view of Schnitzlers' fraudulent conduct. The trial court found that Kane's right to rescind ripened upon his discovering the existence of the Schnitzler-Brown-Scallon agreement. It was subsequently extinguished, however, by Kane's performance of certain acts which was consistent only with the assumption that the contracts were valid and enforceable. To that end, the trial court reasoned that it became impossible to distinguish how much detriment was caused by Schnitzlers' fraudulent representations from the detriment caused by Kane or his agents' poor business decisions. We agree.

Kane received at least $60,000.00 from the operation of Dancenastics. The trial court found that any damages he alluded to were speculative and not supported by the evidence. Moreover, both Kane and his agents admitted to being novices in the dance/exercise business. There was testimony to the fact that Mary and Glen Kane separated in September of 1981. Thereafter, Kane entered into a management assistance contract with Faith Schnitzler to assist him in the operation of Dancenastics. Therefore, it was not clearly erroneous for the trial court to find that the damages caused by the rescissional grounds and

Kane's subsequent business practices and procedures became indistinguishable.

Schnitzlers' counterclaim sought damages or specific performance for Kane's breach of the assignment for sublease. Schnitzlers contend that the trial court erred in finding that Kane was contractually liable to indemnify them for damages, yet failed to grant Schnitzlers such relief.

■ It is a fundamental rule of law that one who seeks to invoke a court's equitable jurisdiction must do so with clean hands. *Reese v. Huron Grain & Coal Co.*, 67 S.D. 9, 287 N.W. 640 (1939); *Wenzlaff v. Tripp State Bank*, 51 S.D. 447, 214 N.W. 844 (1927). Schnitzlers are not entitled to indemnification as requested by their counterclaim because the trial court found, and we affirmed, that they in fact defrauded Kane. "A [person] who does not come into equity with clean hands is not entitled to any relief herein, but should be left in the position in which the court finds him." *Reese*, 67 S.D. at 19, 287 N.W. at 644.

■ Alternatively, Kane's mootness argument is persuasive. A subsequent lawsuit was instituted by Oakland Development Company (lessor) against both Kane and the Schnitzlers. Kane settled the lawsuit on behalf of all parties involved. Moreover, as part of the settlement agreement, Oakland assigned all of its rights against the Schnitzlers to Kane. Schnitzlers are now asking that they be paid money properly due and owing Oakland Development Company. To that end, any right to damages for purposes of indemnification has now been assigned to Kane. We hold therefore that the trial court properly refused to award Schnitzlers damages for breach of the assignment of sublease.

We affirm the judgment of the trial court in all respects.

All the Justices concur.

WUEST, Circuit Judge, Acting as a Supreme Court Justice, participating.