**H & M PARMELY FARMS, a partnership; Harold Leslie Parmely; and Merlyn Clinton Parmely, Debtors/Appellants,**

v.

**FARMERS HOME ADMINISTRATION, Creditor/Appellee.**

Civ. No. 90–3009.

United States District Court, D. South Dakota, C.D.

Aug. 9, 1990.

James Carlon, Pierre, S.D., for debtors/appellants.

Thomas Lloyd, Pierre, S.D., for creditor/appellee.

## MEMORANDUM OPINION

DONALD J. PORTER, Chief Judge.

Debtor Harold Parmely appeals from an Order of the Bankruptcy Court[1] denying his motion to enforce the provisions of his Chapter 11 plan and requiring him to amend his plan to extend appellee Farmers Home Administration's (FmHA) 11 U.S.C. § 1111(b)(2) election to include debtors' chattels. For all of the following reasons, the decision of the Bankruptcy Court that FmHA was not estopped from electing 1111(b)(2) treatment of debtors' chattels under 11 U.S.C. § 363 is affirmed.

This Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. § 158.

## FACTS AND PROCEDURAL HISTORY

Harold and Merlyn Parmely, as individuals and as partners in H & M Parmely Farms, filed Chapter 11 bankruptcy petitions on June 26, 1984. Following consolidation of the cases, debtors proposed a plan of reorganization purporting to dissolve the farm partnership and divide the property between Harold and Merlyn. The FmHA claim and its underlying security was apportioned between them. A further division of the FmHA claim resulted when Harold and Merlyn divided their respective shares into portions secured by real estate and those secured by chattels.

The debtors' disclosure statement was later approved by the Bankruptcy Court. On April 19, 1985 FmHA filed 1111(b)(2) elections on its $241,741.84 claim against Harold and its $304,877.38 claim against Merlyn. These elections made a blanket recital that FmHA's claims were secured by a lien on property of the debtors' estates consisting of real estate and personal property. FmHA balloted against debtors' proposed Chapter 11 plan on May 28, 1985, but later agreed to vote in favor of confirmation in a June 3, 1985 hearing wherein counsel for FmHA stated he would be filing an 1111(b)(2) election.

Based upon FmHA's concession, the Bankruptcy Court ordered that the plan be confirmed:

The Court will find that the unsecured creditors are not participating in the reorganization process and that the principle unsecured creditor, Farm Home Administration, has agreed to change its ballot to accept on a modification in the plan of valuations and the filing of a Section 1111(b) election by the Farm Home Administration and that the debtors are entitled to have an order of confirmation.

Mr. Carlon, you may prepare the order, and that should be submitted with the revised plan that Mr. Haar [counsel for FmHA] has agreed to.

Transcript of Hearing held June 3, 1985 at pp. 5–6. Although the June 3, 1985 hearing would indicate that the parties did not

---

1. The Honorable Irvin N. Hoyt, Chief Bankruptcy Judge, United States Bankruptcy Court for the District of South Dakota.

know or had forgotten of the 1111(b)(2) election made by FmHA on April 19, 1985, debtors' counsel and the Court were fully aware of the election on the date of the hearing.

Subsequently, debtors submitted their Final Amended Consolidated Chapter 11 Plan of Reorganization on September 23, 1985. The plan designated Section A Claims as those of Merlyn and Section B Claims were to be borne by Harold. Harold's section of the plan provided for FmHA's claim as follows:

> Class 4B: The secured portion of an undersecured claim of FmHA on real estate in the amount of $131,755.00 will be amortized over the terms of the original contract dated May 3, 1977 at 5% interest with a final due date of 2017. First annual payment of $8,337.51 will be due one year after the Date of Approval (assuming 32 annual payments). This claim will be secured by a second mortgage on 560 acres, more or less, owned by Harold. FmHA having elected 1111(b)(2) will retain its mortgage on its entire claim of $241,741.84 until Debtors had [sic] made all of the 32 annual payments of $8,337.51.

> Class 5B: The secured portion of an undersecured claim of FmHA on personal property in the amount of $34,500.00 will be amortized under the terms of the original contract with Harold dated June 19, 1978 at 5% interest with a final due date of 2018. First annual payment of $2,155.91 will be due one year after the Date of Approval (assuming 33 annual payments). This claim will be secured by machinery, equipment, livestock, growing crops, stored crops and the proceeds of Harold up to the value of the claim.

Final Amended Consolidated Chapter 11 Plan of Reorganization, pp. 15–16 (September 23, 1985).

After operating successfully under the plan for three years, Harold's health began to deteriorate. In late 1988, in an effort to reduce Harold's work load, the Parmelys notified FmHA of a selldown of the cattle. The sale ensued and debtors subsequently tendered $33,616.63 as a payoff of FmHA's remaining Class 5B claim. The proceeds of the sale totalled $68,743.20. FmHA refused to accept the amount as a payoff of its chattel security contending that its claim included both Class 4B and Class 5B as a result of its blanket 1111(b)(2) election.

The Bankruptcy Court subsequently denied debtors' motion to enforce the terms of the Chapter 11 plan. Instead, the Bankruptcy Court extended FmHA's 1111(b)(2) election to both real estate and chattels.

## DISCUSSION

### I. Standard of Review

In reviewing judgments of bankruptcy courts, district courts act as appellate courts. Accordingly, the findings of fact of the Bankruptcy Court will not be set aside unless clearly erroneous, but its legal conclusions are subject to *de novo* review. Bankr.R. 8013; *see Wegner v. Grunewaldt*, 821 F.2d 1317, 1320 (8th Cir.1987). The Bankruptcy Court's findings of fact will be disturbed only if the Court is definitely and firmly convinced that a mistake has been committed. *In re Hilyard Drilling Co., Inc.*, 840 F.2d 596, 599 (8th Cir.1988).

### II. FmHA Is Not Barred From Contesting Provision 5B of the Debtors' Final Amended Chapter 11 Plan

The Bankruptcy Court addressed debtors' argument that FmHA was estopped from having its 1111(b)(2) election fully effective as to both real estate and chattels by finding instead that debtors had unclean hands which prevented the court from equitably enforcing the express provisions of the final amended plan. Because debtors wrongfully limited FmHA's 1111(b)(2) election only to real estate, they were barred from claiming that FmHA was estopped from having its 1111(b)(2) election encompass both real estate and chattels. Debtors' conduct, according to the Bankruptcy Court, subjected them to the double-edged blade of equity; that is, one who comes into equity must do so with clean hands. *See Kane v. Schnitzler*, 376 N.W.2d 337 (S.D.1985); *Reese v. Huron Grain & Coal Co.*, 67 S.D. 9, 287 N.W. 640 (1939).

The Bankruptcy court cited three examples of debtors' inequitable conduct relative to the filing of the final amended consolidated plan: (1) debtors' unilaterally inserted a provision in the final amended plan that limited FmHA's 1111(b)(2) election to real estate only, notwithstanding the blanket coverage of FmHA's election; (2) debtors' filed the final amended plan approximately four months after the confirmation hearing; and (3) debtors' failed to give FmHA notice and an opportunity to object to the plan. The record amply supports the Bankruptcy Court's finding of unclean hands.

Debtors argue that they did not act inequitably because they were not served with FmHA's election nor did they know of the election. 1111(b)(2) elections are made according to Bankruptcy Rule 3014. Rule 3014 provides simply:

> An election of application of § 1111(b)(2) of the Code by a class of secured creditors in a chapter 9 or 11 case may be made at any time prior to the conclusion of the hearing on the disclosure statement or within such later time as the court may fix. The election *shall be in writing and signed unless made at the hearing on the disclosure statement.* The election, if made by the majorities required by § 1111(b)(1)(A)(i), shall be binding on all members of the class with respect to the plan.

Emphasis supplied.

■ Ignoring for the moment the matter of the written elections filed April 19, 1985, it is sufficient under Rule 3014 that counsel for FmHA made the oral election at the June 3, 1985 hearing on the disclosure statement. Debtors, therefore, were given adequate notice of FmHA's 1111(b)(2) election. In addition, service of the written 1111(b)(2) elections on debtors' counsel was not required at this non-adversarial stage of the proceedings. Bankr.R. 7001. Nor does Bankruptcy Rule 7005 require service of the written elections as it applies only in adversary proceedings and does not displace the specific language of Rule 3014.

Moreover, it is irrelevant whether statements by counsel for FmHA mislead debtors into thinking that the election would be filed later when in fact the written election had already been filed. The fact remains that debtors were aware of the election upon conclusion of the June 3, 1985 hearing and, as was the conclusion of the Bankruptcy Court, wrongfully amended their plan to treat the real property security and chattel security differently.

Finally, debtors' reliance on *In re Pearson*, 96 B.R. 990 (Bkrtcy.D.S.D.1989), is misplaced. In denying the creditors' motion to modify a confirmed Chapter 12 plan to require the sale of under-valued land, *Pearson* found that FmHA was "well aware of the potential valuation question from years of prior dealing with the debtor." *Id.* at 993. But in this appeal the Bankruptcy Court found that FmHA had not been given notice of the limited 1111(b)(2) treatment and an opportunity to object to the final version of debtors' confirmed plan. Moreover, the debtor Pearsons' undervaluation of the land was excusable under the circumstances, unlike the unilateral and bad faith conduct of the debtors' in the instant case. In summary, the Bankruptcy Court correctly concluded that debtors' plan should be amended to extend FmHA's 1111(b)(2) election to the chattel security.

III.  Article X of the Debtor's Confirmed Plan Does Not Prevent FmHA From Maintaining Its 1111(b)(2) Election

■ As stated by the Bankruptcy Court, 1111(b)(2) permits the undersecured creditor to maintain a lien on its collateral to secure the full amount of its allowed claim. 5 L. King, *Collier on Bankruptcy* ¶ 1111.02[5] (1990). Simply stated, the plan must provide that the present value of the payments under the plan at least equals the amount of the 11 U.S.C. § 506(a) secured portion of the claim, and, that the total of the payments under the plan equals the full amount of the allowed claim. 11 U.S.C. §§ 1129(a)(7)(B) and 1129(b)(2)(A)(i); *In re Western Real Estate Fund, Inc.*, 75 B.R. 580, 584 (Bkrtcy.W.D.Okla.1987). If, for example, the electing creditor holds a first mortgage of $1,000,000 on property

valued under § 506(a) as worth only $500,-000, the plan must pay out at least $1,000,-000 to the creditor over the life of the plan, and the present value of the payments must be at least $500,000.

■ But 1111(b)(1)(B)(ii) precludes a recourse undersecured creditor's election under 1111(b)(2) if the secured property is sold under the plan or if a prospective sale of the property is made pursuant to 11 U.S.C. § 363. Furthermore, before a plan which provides for a prospective sale of property can be confirmed under § 1129(b)(2)(A)(ii), it must comply with § 363(k).[2] *Western Real Estate*, 75 B.R. at 589. Thus, where a Chapter 11 plan contemplates liquidation of certain assets, the intent of § 363(k) is to notify the creditor of the upcoming sale of the secured property and allow it to reap the "benefit of its bargain" by "bidding in debt" to the full amount of its allowed claim and recovering the collateral. *Collier, supra,* at ¶ 1111.02[4]; *In re Waterways Barge Partnership,* 104 B.R. 776 (Bkrtcy.N.D.Miss. 1989). In the event the debtor desires to sell the property, the recourse creditor could bid in debt at a fair and adequate sale, recover the collateral and submit a deficiency claim against the bankruptcy estate.

Article X of the debtors' confirmed plan allows for the sale of property of the estate:

> If at any time during the term of this plan the debtors determine that it is expedient to sell land, machinery, equipment, livestock, grain or any other property, they may do so and apply the proceeds to the secured claim of any creditors who have a security interest in the property. Therefore, the secured claim will be reduced and any regularly scheduled payments to the creditor or creditors may be reduced accordingly in the amount of the sale proceeds turned over or the number of payments may be reduced at the option of the debtors.

Final Amended Consolidated Chapter 11 Plan of Reorganization, pp. 16–17 (September 23, 1985).

The Bankruptcy Court found that Article X was not a sale under § 363 because it did not give FmHA an opportunity to credit bid its claim. The Court took the position that § 363 was implicated only in a plan which contemplates liquidation. *See In re Union Square Associates, Ltd.,* 53 B.R. 532 (Bkrtcy.E.D.Ark.1985). Because debtors' plan instead contemplated reorganization, FmHA must be allowed to make an 1111(b)(2) election. Relying on *In re Waterways Barge Partnership, supra,* the Bankruptcy Court concluded that, despite the prohibition of 1111(b)(1)(B)(ii), FmHA could not be precluded from making an 1111(b)(2) election. The following rationale supports the Bankruptcy Court's conclusion:

> The option available to the *recourse* undersecured creditor who wishes to have his claim treated as fully secured is the § 1111(b)(2) election. Regardless of whether the secured property is proposed to be sold under the plan, if the undersecured creditor is not permitted to "credit

---

**2.** The court in *Western Real Estate* noted an apparent inconsistency regarding the applicability of § 363 to post-confirmation sales of property:

> .... [U]nder [11 U.S.C.] § 1141(b), "the confirmation of the plan vests all of the property of the estate in the debtor," while § 363(b) appears to govern the sale or lease ... only of property of the estate.

*Western Real Estate*, 75 B.R. at 589.

Notwithstanding that confirmation vests the debtor with title to the property, to give effect to a cramdown under § 1129(b), the express application of § 363(k) must override the limitation of § 363(b) as to property of the estate, i.e., pre-confirmation property. It would be wholly unfair and inequitable to force a plan upon a secured creditor without allowing it an opportunity to protect itself in the event of post-confirmation sales contemplated under the plan.

In this case, however, it should be remembered that FmHA voted to approve the plan pursuant to § 1129(a). Nevertheless, it can hardly be assumed that an accepting creditor under § 1129(a) would settle for less protection of its secured claim than would a creditor who is subject to a § 1129(b) cramdown. More importantly, though, is the conclusion that where confirmation followed a creditor's acceptance of the plan after having made the 1111(b)(2) election, the debtor's subsequent attempt to deny that election would implicate the cramdown provisions of § 1129(b)(2), including the notice provision of § 363(k).

bid" its claims, it is not precluded from making the § 1111(b)(2) election, regardless of the literal prohibition set forth in § 1111(b)(1)(B)(ii).... Had the debtor's plan provided [creditors] an opportunity to "credit bid", the § 1111(b)(2) election would clearly be prohibited.

*In re Waterways Barge Partnership*, 104 B.R. at 782 (emphasis original).

While agreeing with this rationale, on appeal FmHA also claims that Article X is not sufficiently specific to prevent the 1111(b)(2) election. The fact that Article X fails to give FmHA an opportunity to credit bid on the secured property, is but a single indication of the multiple shortcomings of the provision in complying with § 363(k). The bankruptcy court in *Western Real Estate* held that a nonspecific sales provision could not deprive nonrecourse creditors of their 1111(b)(2) election. In pertinent part, the court stated:

Each of the plans before the court provides for the sale of all properties subject to Class 4 claims after confirmation and provides that such sales shall be pursuant to 11 U.S.C. § 363(k)....

\* \* \* \* \* \*

The plans before the court, while mandating the sale of all properties, are totally without specificity as to the details of the sale, including when the sale must take place, the identity of the purchaser and the price to be obtained. While the debtors, by capitalizing their projections of future income, have generated projections of future values for each of the properties, the plans do not require, or commit the debtors to, the sale of any property at any particular price or at or before the date for which the projected future valuation is made.

\* \* \* \* \* \*

... Debtors should not be permitted to deprive objecting non-recourse undersecured creditors of the valuable rights which would be conferred upon them under § 1111(b)(1) by simply providing for the sale of the property at some unspecified future time, to some unspecified purchaser, at an unspecified price and on unspecified terms.

*Western Real Estate*, 75 B.R. at 588–89.

The same concerns apply to recourse creditors who are not given an opportunity to protect their secured claim by bidding in debt at the sale and recovering the collateral. *Collier*, at ¶ 1111.02[4]. Article X of the plan provides no prospective sales protection to FmHA for the de facto liquidation of Harold's livestock operation—a sale of secured personal property not in the ordinary course of business. Therefore, FmHA is not precluded from making an 1111(b)(2) election on its chattel security.

Debtors argue that *Western Real Estate* actually supports their position because in that case the allowance of the 1111(b)(2) election was necessary to confer upon nonrecourse undersecured creditors the preferred status of recourse treatment under 1111(b)(1)(A). In other words, the unsecured component of the creditors' claims would have been destroyed by selling all the properties after confirmation. It is the contention of debtors that FmHA remains fully secured even with the payoff of its Class 5B claim and, therefore, it is unnecessary to extend 1111(b) treatment to the chattel security. But whether or not FmHA maintains its secured claim for the entire amount of its allowed claim pursuant to Class 4B ignores the fact that FmHA is also entitled to secure its entire allowed claim of $241,741.84 as to Class 5B. FmHA elected 1111(b)(2) treatment as to all secured property and debtors have failed to persuade the Court that they complied with the preclusion requirements of 1111(b)(1)(B).

As a result of debtors' sale, FmHA's lien must attach to the full amount of the proceeds. A sale subject to § 363(k) voids the 1111(b)(2) election as the lien attaches to the proceeds. 11 U.S.C. § 1129(b)(2)(A)(ii). But Article X does not provide for sales in compliance with § 363(k), therefore, FmHA's 1111(b)(2) election is in effect and its lien attaches to the proceeds. All proceeds derived from the sale must be applied to decrease the amount of FmHA's lien on debtors' properties.

Of no avail to debtors is their argument that Harold will not be enriched by the proceeds in excess of the $33,000 required to pay off FmHA's chattel claim. Harold sold equipment and livestock for a total of $68,743.20. The 1111(b)(2) election grants to the creditor the benefit of appreciating collateral in the event of a liquidation as the lien continues in the full amount of the allowed claim. Accordingly, FmHA is entitled to the full sale proceeds in partial satisfaction of its lien on both real estate and chattels held by the debtors.

### CONCLUSION

The Bankruptcy Court's factual findings and legal conclusions must stand as supported by the record and applicable statutory and case law. The December 13, 1989 Order of the Bankruptcy Court denying debtors' motion to enforce the provisions of their Chapter 11 plan and extending 1111(b) treatment to FmHA's chattel security is affirmed. The Court shall issue an order consistent with this opinion.